(91 N. W. Rep. 436.)

---

## E. I. DONOVAN *vs.* H. D. ALLERT.

---

**Municipal Corporations—Title in Street—Telephone Poles—Franchise from Council—Compensation—Injunction.**

The defendants were granted a franchise to construct and operate a telephone exchange in the city of Langdon. The defendants proceeded to perfect such system, and, in doing so, placed two telephone poles in the street in front of plaintiff's lot and residence, and in front of other lots belonging to plaintiff. One of these poles was set two feet from the sidewalk, and directly in front of a walk leading from the sidewalk to the dwelling house. The defendants did not pay plaintiff for such use, nor offer to, nor did plaintiff consent to such use of the street. The streets and alleys of said city were given and dedicated for public use by the original proprietors of the town site. *Held:*

1. That the plaintiff is the owner of the fee in the street to the center thereof, except as conveyed to the public for street purposes.

2. That such use of the street for telephone poles is not a street use, proper, and is a new burden or servitude thereon, inconsistent with the use of the street for travel.

3. That the franchise from the city council to defendants, granting them the privilege of constructing and maintaining a telephone system in said city, did not and could not authorize the occupancy of said street for such purpose, against plaintiff's consent, unless compensation was made to him.

4. That injunction is a proper remedy to prevent such use of the street until the constitutional provision in regard to compensation for taking or damaging property for public use has been complied with.

Appeal from District Court, Cavalier County; *Kneeshaw,* J.

Action by E. I. Donovan against H. D. Allert and others. Judgment for defendants, and plaintiff appeals. Reversed.

*Gordon & Lamb,* for appellant.

*Cleary & McLean,* for respondents.

N. D. R.—19

MORGAN, J.   The plaintiff brings this action, and seeks to permanently enjoin the defendants from erecting telephone poles on the streets in front of his lots, situated in various blocks in the city of Langdon, N. D., and particularly described in the complaint, which is, in substance, as follows:   That among other lots so described as being affected by the erection of such telephone poles, guy poles, cross bars and wires is the lot on which is erected the dwelling house in which plaintiff resides; that two poles have been erected in the street in front of said lot, and that the erection of said poles at said places interferes with the ingress and egress to his said dwelling house, and interferes with his property rights in said street, and deprives him of light and air to which he is entitled, and that such poles and fixtures render the appearance of said house unsightly, and tend to lessen its financial value and render it unsaleable, and that such poles and fixtures will interfere with the growth of shade trees . planted by him in close proximity to said poles; that said poles are 30 feet in height, and are placed in the ground at a distance of 2 feet from the sidewalk, and immediately in line of and in front of the walk leading from the sidewalk to his said dwelling house; that said poles and wires interfere or will interfere with his legal rights in several other lots owned by him in said city; that the defendants were granted a franchise by said city to construct and operate a telephone system in said city by an ordinance duly enacted by the city council thereof, and that said ordinance does not provide for any compensation to be given to owners of property abutting on the streets of said city, nor does it provide that condemnation proceedings shall be instituted and completed before such system is constructed, or at any other time; that the said poles were erected without his consent and without compensation to him, and therefore in violation of § 14 of the constitution of North Dakota, and of § 5933 of the statutes of said state.   The demand for relief is that the defendants be temporarily and permanently enjoined from putting up any more poles on the streets on which plaintiff's lots abut, and from operating such telephone exchange, until defendants have made just compensation to plaintiff as required by the laws and the constitution of the state.   The defendants answer by denying any damage to plaintiff's propery, and further allege that they have undertaken the construction of a telephone system in the city of Langdon under the provisions of an ordinance of the city council granting them the right to do so under prescribed restrictions, and the poles and wires are erected under the supervision of the committee on streets and alleys, as appointed by said council, and in pursuance of said ordinance.   The plaintiff applied for a preliminary injunction to restrain the defendants from proceeding with the erection of such poles and the operating of the telephone system until plaintiff had been duly· compensated for damage done to his property.   The trial court issued an order to show cause

why the defendants should not be so restrained. A hearing was had upon such order, based on affidavits presented by the parties. On motion of the defendants, the order to show cause was dissolved and the preliminary injunction refused on the ground that the facts shown did not show that the plaintiff was entitled to the relief sought. The plaintiff has appealed to this court from such order denying his application for a preliminary injunction. The defendants contend in this court that the plaintiff is not entitled to relief by injunction, as he has a plain, speedy, and adequate remedy at law, the defendants not being shown to be insolvent or unable to respond in damages. This question will be considered and decided after a decision of the other question in the case.

The main question involved—the use of the streets of a city for the poles and other equipments of a telephone system, without compensation to the owners of the lots abutting on the streets—is one of difficulty to determine, and one of vast importance and far-reaching consequences. Upon a question of such magnitude, and practical interest to almost every citzen of the state, as well as to almost every municipality, it is to be regretted by this court that counsel deemed it advisable to abandon the privilege of an oral argument, and to submit the questions raised on written briefs. However, the subject of the action is not a new one, and has frequently been before the courts of many jurisdictions. True, the decisions of such courts are not harmonious. Still, every phase of the principle contended for in this case has been affirmed in learned decisions by courts of the highest standing, and likewise disaffirmed by other courts of equal standing, in opinions showing equal ability and learning.

Before entering upon a decision upon the merits, a statement of a few material facts is advisable: The original plat of the city of Langdon, as filed by the original proprietors, dedicates and gives the streets and alleys of said city for public use. The ordinance of said city granting the telephone franchise to the defendants for 15 years is silent upon the subject of compensation to abutting or other lot owners for damages by reason of the occupation of the streets by defendants for telephone purposes, and is silent as to condemnation proceedings therefor. Under section 5956, Rev. Codes, the right of eminent domain may be exercised in behalf of several enumerated public uses; among them being telegraph and telephone lines. The question involved, as considered by this court, is that of the occupation of the streets by the defendants for telephone purposes, and not that of the direct or actual occupation of the plaintiff's lots by said company for said purposes, outside of street occupation. Certain conceded principles of law applicable to the questions involved in this case may be stated: The constitution of this state provides that private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for, the owner. The legislature has the power, by general laws,

to regulate the uses to which the streets may be subjected as against the public. City councils in this state have been granted the power to regulate or prevent the use of the streets for telegraph and telephone poles. § 2148, Rev. Codes. Prior to the adoption of the Code of 1895 the regulation of telephone systems and their construction was governed by § 3025, Comp. Laws, enacted in 1885. A telephone system is classed under the statute as one of public use. § 5956, Rev. Codes. Chapter 35 of the Code of Civil Procedure provides that private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner, and further provides the means and procedure under which such damages may be ascertained. The plaintiff in this case is the owner of the fee in the lot to the middle of the street, and entitled to the beneficial use thereof, subject to the easement or limited fee of the public in the street for its use for public purposes. In this case the absolute fee of these lots was never in the city, and it has simply an easement or a limited fee therein. In *Railway Co.* v. *Lake,* 10 N. D. 541, 88 N. W. Rep. 461, this court decided "that the public has only an easement in streets and highways, the fee remaining in the original owner or his successor, and that such owner may exercise such acts of ownership thereto as are not inconsistent with the easement." In that case there was no dedication by plat. In the case at bar there was one. However, in construing § 2422, Rev. Codes, which declares the effect of such dedications, we hold that a proprietor who dedicates by plat does not convey an absolute fee to the public, but reserves the whole estate and title, except the limited fee conveyed to the public for the designated and intended use.

The question to be decided on this appeal is, is the plaintiff entitled to recover damages from the defendants by reason of their placing telephone poles on the streets directly in front of his lots and residence? If these telephone poles are lawfully placed on lots which he owns subject to the easement of the public, and none of his rights have been violated, he is not entitled to damages. There must be some infringement upon his statutory or constitutional rights before compensation shall rightfully belong to him. If the city of Langdon and the defendants have pursued the course laid down by the law, and no constitutional right has been been invaded, then the plaintiff has no just cause for complaint in any court. On examination of the question, with this principle in view, we find that the defendants were engaged in constructing this telephone system, and using the streets on which plaintiff's lots abutted, under the sanction of legislative authority. Defendants were granted a franchise to do this work, and the same could not, without difficulty and hardship be completed without placing poles in the streets and alleys of the city. A telephone system is a public benefit to the people, although the objects of its construction in this and all other cases is that of private gain. The fact that the telephone is a public benefit and use does not

give to the owners any right to occupy or use private property without the owner's consent, unless condemnation proceeding are regularly instituted and prosecuted to judgment. The fee title to the street in front of plaintiff's dwelling house being in the plaintiff, except for street purposes, he owns the lot to the middle of the street, subject to the rights of the public, to the same extent as he owns the portion of the lot on which his dwelling house stands. He alone is entitled to all uses of the lot, except the rights of the public by virtue of the dedication of the part in the street to the public, but is entitled to no use thereof inconsistent with or antagonistic to the purposes and uses for which it was dedicated to the public. The plaintiff's right to the beneficial uses of the street, subject to the rights of the public, is a property right, entitled to the law's protection whenever unlawfully infringed on, and, like all property rights, is within the protection of the constitution. Dill. Mun. Corp. § 656. "The abutter has the exclusive right to the soil, subject only to the easement of the right of passage in the public, and the incidental right of properly fitting the way for use. Subject only to the public easement, he has all the usual rights and remedies of the owner of the freehold." Elliott, Roads & S. p. 519.

This brings us to the real questions in this case: To what public purposes were the streets originally dedicated? Is the use of the street for telephone posts and wires within the purposes of the original dedication to the public by the original proprietors?

The primary use of a street or highway is confined to travel or transportation. Whatever the means used, the object to be attained is passage over the territory embraced within the limits of the street. Whether as a pedestrian, or on a bicycle, or in a vehicle drawn by horses or other animals, or in a vehicle propelled by electricity, or in a car drawn by horses or moved by electricity, the object to be gained is moving from place to place. The same idea is expressed by courts and text writers, that "motion is the primary idea of the use of the street." The defendants claim that the use of the streets for telephone poles is within the use contemplated, as it facilitates the transmission of intelligence, and makes intercommunication between persons possible without the use of the street, and thus lessens travel by persons on the streets, and thereby renders travel thereon free from the annoyance and inconvnience of crowded streets. There is force in the contention, and several courts have adopted the view that the use of poles for such purposes is within the purpose of the original dedication, and therefore not a new use nor an additional burden on the street, because such use pertains to travel on the street. That it lessens travel on the street is admitted. That, however, is hardly the test. The question is, does it lessen travel on the street by such means as cause a permanent obstruction of the street for a purpose not within the original dedication? The plaintiff is entitled to free access to his house, and to light and air for his house, without obstruction. If for any public

purpose inconsistent with the grant to the public of the use of the street, the street is obstructed in front of his lot abutting on such street, such use entitles him to compensation. If within the original purpose, and he is not obstructed in gaining access to his lot or building, and not deprived of light or air, he is not entitled to relief or to compensation. The city had the right to authorize the defendant to construct a telephone system in the manner described, if it did not infringe upon any of the property rights of the plain-tiff to the street by virtue of his ownership of the lot. Neither the city council nor the legislature could deprive the plaintiff of compensation for his property rights in such lot, if the telephone poles set thereon are not a use of the street, within the purposes for which the easement was originally conveyed to the public. The legislature cannot deprive the plaintiff of his property rights without his consent and without compensation. The constitution prohibits such taking or damaging of his property, even for public purposes, without first procuring his consent or first compensating him. The legislature may authorize the use of the easement of the public in the street, but not to the damage of the owners of real estate fronting on such street, unless condemnation or consent or compensation is first made or given. The streets of said city were given to the public for public use. What is understood by "public use?" The primary intention and idea of the use of the street was for travel,—moving from place to place in any way that does not interfere with the use of the street for travel in any other way. The manner or mode of travel is not restricted to those known or in use at the time of the dedication, but may be those modes of travel that are the result of modern inventions. The new modes of travel must not interfere with the property rights of the abutting owner, nor with the use of the street in all other ways by the public, as contemplated or existing at the time of the dedication or later. The fact that the statute designates the telephone as a public use does not authorize the use of the streets by it without restriction. If the use of the telephone on the streets interferes with travel, or is inconsisent with the use of the streets for travel, as originally dedicated, or is injurious to the property rights of abutting owners, the legislature may authorize it to be placed on the streets, but cannot in any manner deprive the abutting owner of his property rights, nor deprive him of the right to compel payment for the use or damage of his property.

The courts have frequently passed upon the question whether the use of the streets for telephone purposes is an additional servitude or burden to that understood as a proper street use. Those holding that it is not a street use, in its proper acceptation, are: In *Krueger* v. *Telephone Co.* (Wis.) 81 N. W. Rep. 1041, 50 L. R. A. 298, that court says: "A street may subsist, and the lot owner have the complete use of his adjacent property. Not so if a portion of the street has been permanently taken for poles or other necessary structures for

a telegraph or telephone line. No one doubts but that private rights are affected by the construction and maintenance of such a line in a way entirely different from the ordinary use of the highway. Nor is there room to dispute the fact that such construction constitutes a permanent occupancy of the land, independent of the public use. This occupancy being for the direct benefit of private corporations, and only for the indirect benefit of the public, how can it be said, with any show of justice, that when land is condemned for a street the public must not only pay for its use, but also for the use of such quasi public corporation as the legislature have given the power to use the highway." In *Eels* v. *Telegraph Co.,* 143 N. Y. 133, 38 N. E. Rep. 202, 25 L. R. A. 640, that court said, in a case involving the use of a rural highway: "We cannot agree that this permanent appropriation and exclusive possession of a small portion of the highway can properly be regarded as a newly discovered method of exercising the old public easement, for the very reason that this so-called new method is a permanent, continuous, and exclusive use and possession of some part of the public highway itself, and therefore cannot be simply a new method of exercising such old public easement. It is a totally distinct and different kind of use from any heretofore known. It is not a mere difference in the kind of vehicle, or in their number or capacity, or in the manner, method, or means of locomotion. * * * Here, however, in the use of the highway by the defendant is the fact of permanent and exclusive appropriation and possession,—a fact which is, as it seems to us, wholly at war with that of the legitimate public easement in a highway." In *Telegraph Co.* v. *Barnett,* 107 Ill. 507, 47 Am. Rep. 453, that court said: "In the same sense the construction of a line of telegraph on the highway is an additional servitude to which the fee of the land had not before been subjected. The servitude differs more in degree than in character, and, whether the damages are great or small, the corporation asking for or appropriating to itself the benefit of such new servitude must make just compensation to the owner of the fee." In *Telephone Co.* v. *Mackenzie,* 74 Md. 36, 21 Atl. Rep. 690, 28 Am. St. Rep. 219, the court said: "To what extent, then, does the statute justify the action of the appellant, and protect it from liability? The planting of a telegraph or telephone pole in a highway or street is not a public nuisance, because the legislature has declared that it shall not be, but the general assembly was powerless to subject the reversionary interest in the bed of such highway or street to an additional servitude without making appropriate provision for just compensation to the owner." In *Jaynes* v. *Railroad Co.,* (Neb.) 74 N. W. Rep. 67, 39 L. R. A. 751, that court said: "It is very generally held that telegraph and telephone poles in city streets or rural highways entitle the abutting property owner to compensation. * * * The principle upon which all these cases rest is the sound one that the highway or street is dedicated to the public to pass and repass thereon, and that the erection of poles in the streets by the

telephone or telegraph companies is a permanent and exclusive occupation of the streets by such companies, to the continued exclusion of the remainder of the public, and to that extent is a continued obstruction of the street." In *Telegraph Co.* v. *Smith* (Md.) 18 Atl. Rep. 910, 7 L. R. A. 200, that court said: "A telegraph or telephone company is subject to the provisions of Const. Md. Art. 3, § 40, which provides that private property shall not be taken for public use without just compensation; and the averment in a bill for injunction that such a company is proceeding or threatens to proceed to construct its lines of poles and wires over complainant's land without his leave, and without paying or tendering him compensation, is sufficient to entitle him to an injunction." In *Telegraph Co.* v. *Williams* (Va.) 11 S. E. Rep. 109, 8 L. R. A. 429, 19 Am. St. Rep. 908, that court said: "It is true that the use of a telegraph company is a public use. That company is a public corporation, as to which the public has rights which the law will enforce, but these public rights can only be obtained by paying for them. The use, while in one sense public, is not for the public generally. It is for the private profit of the corporation. * * * There is no reason in law or in common justice why it should not pay for what it needs in the prosecution of its business." In *Stowers* v. *Cable Co.*, (Miss.) 9 So. Rep. 356, 12 L. R. A. 864, 24 Am. St. Rep. 290, that court said: "A city cannot grant to a telegraph company the right to erect its line along a public street without first making compensation to the abutting property owners, since the line is an additional burden." In *Broome* v. *Telephone Co.*, (N. J. Ch.) 7 Atl. Rep. 851, it is said that "it is enough to say on that head that it does not appear that the road board had any power to authorize any one to set up poles in the land of the highway, and thus subject the land to an additional servitude besides that for which it was condemned." In *Halsey* v. *Railway Co.*, 47 N. J. Eq. 380, 20 Atl. Rep. 859, the court said: "And this principle exhibits in a very clear light the reason why it has been held that the placing of telegraph and telephone poles in a street imposes an additional servitude upon the land. They are not placed in the street to aid the public in exercising their right of free passage, nor to facilitate the use of the street as a public way, but to aid in the transmission of intelligence." In *Metropolitan Tel. & Tel. Co.* v. *Colwell Lead Co.*, 67 How. Prac. 365, that court said: "I am clearly of the opinion that such a use of the street is not a street use, and does not come within the terms of the trust upon which the city holds the fee, and that, so far as the rights of the abutting owners are involved, the legislature has no power to authorize plaintiffs to use the street for such purpose." Joyce, Electric Law, § 321, says: "After a careful examination of the cases in which this question has arisen, and of the many thorough discussions contained in the opinions of such cases, and of the rules of law applicable thereto, we are of the opinion that the construction of telegraph and tele-

phone lines upon the highways or streets is not within the original purposes of the dedication or taking of the same, and that the poles and wires constitute an additional servitude entitling the original owner to compensation." 2 Dill Mun. Corp. § 698a: "On the whole, the safer and perhaps sounder view is that such a use of the street or highway, attended as it may be, especially in cities, with serious damage and inconvenience to the abutting owner, is not a street or highway use proper, and hence entitles such owner to compensation for such use, or for any actual injury to his property caused by poles and, lines of wire placed in front thereof." Lewis, Em. Dom., says: "The lines of a telegraph or telephone company are on the same footing as the steam railroad. They form no part of the equipment of a public highway, but are entirely foreign to its use. Where the fee of the street is in the abutting owner, he is clearly entitled to compensation for the additional burden placed on the land." Elliott on Roads and Streets, says: "We are inclined to the opinion that such a use constitutes a new burden for which the owner of the fee is entitled to compensation." Croswell on the Law of Electricity (section 110) says: "The use of the highways, however, for the transmission of intelligence, is a use wholly different from public travel. Incidentally, no doubt, it affects somewhat similar objects. * * * The nature of the use, however, is essentially different, and the courts have generally recognized this difference." See, also, as favoring the same principles, *Cable Co.* v. *Irvine* (C. C.) 49 Fed. Rep. 113; *Daily* v. *State*, 51 Ohio St. 348, 37 N. E. Rep. 710, 24 L. R. A. 724, 46 Am. St. Rep. 578; *Cable Co.* v. *Eaton,* 170 Ill. 513, 49 N. E. Rep. 365, 39 L. R. A. 722, 62 Am. St. Rep. 390. The following cases are authority for a doctrine directly the reverse of that enunciated in the cases and text books cited: *People* v. *Eaton,* 100 Mich. 208, 59 N. W. Rep. 145, 24 L. R. A. 721; *Pierce* v. *Drew,* 136 Mass. 75, 49 Am. Rep. 7; *Cater* v. *Exchange Co.*, 60 Minn. 539, 63 N. W. Rep. 111, 28 L. R. A. 310, 51 Am. St. Rep. 543; *Julia Bldg. Ass'n* v. *Bell Tel. Co.,* 88 Mo. 258, 57 Am. Rep. 398; *Hershfield* v. *Telephone Co.,* 12 Mont. 102, 29 Pac. Rep. 883; *Magee* v. *Overshiner,* (Ind. Sup.) 49 N. E. Rep. 951, 40 L. R. A. 370, 65 Am. St. Rep. 358.

This brings us to the final question in the case: Is the plaintiff entitled to an injunction? The defendants contend that he is not, because he can resort to an action for damages, and thereby be fully compensated for whatever damages he has or may suffer. That such is the general rule is, without doubt, true. It is also a general rule that a wide discretion is vested in trial courts when granting or refusing preliminary injunctions, and that appellate tribunals will hesitate before interfering with the exercise of such discretion by trial courts. But we have reached a conclusion that the facts of this case place it beyond the application of these ordinary rules. The defendants are proceeding to damage the plaintiff's property without first complying with a mandatory provision of the constitution. That pro-

vision of the constitution is peremptory that property taken or damaged for public use shall first be paid for, and the legislature has also enacted that payment must precede the taking or damage, and has provided adequate means for establishing the amount of such damages. The taking or damaging of private property for public use without the owner's consent is deemed so serious that payment therefore is a prerequisite to attempting to do so. The defendants have the ultimate right, under their franchise, to use the street for telephone purposes; but payment of damages, actual or consequential, to plaintiff's property, must be first attended to.   This does not mean that it may first be appropriated, and paid for at the end of a suit for damages, but means that payment must precede the taking or damaging.   Judge Brewer, in *McElroy* v. *Kansas City*, (C. C) 21 Fed. Rep. 261, said: "When the defendant has the ultimate right to do the act sought to be restrained, but only upon some condition precedent, and compliance with the condition is within the power of the defendant, injunction will almost universally be granted until the condition is complied with.   This principle lies at the foundation of the multitude of cases which have restrained the taking of property until after the payment of compensation, for in all those cases the legislature has placed at the command of the defendant means for ascertaining the value of property.   In those cases the courts have seldom stopped to inquire whether the value of the property sought to be taken was little or great, whether the injury to the complainant was great or small, but have contented themselves with holding that, as the defendant had full means for ascertaining such compensation, it was his first duty to use such means, determine and pay the compensation, and until he did so the taking of the property would be enjoined."   In *Searle* v. *City of Lead*, (S. D.) 73 N. W. Rep. 913, it is said: "But the framers of our organic law deemed it proper to fully protect the rights of the abutting property owner in the constitution itself, and not leave him to the 'sense of justice' by which a community is supposed to be governed. *   *   *   The constitutional provision is unquestionably a wise and just one, and well calculated to protect property owners from injustice and wrong on the part of municipal or other corporations or individuals invested with the privilege of taking private property for public use, and should be given a liberal construction by the courts in order to make it effectual in the protection of the rights of the citizen."   The principles enunciated in these cases are equally as applicable to the facts of the case at bar as to the facts of those cases, and the right to a preliminary injunction was sustained in each of them.   "When, however, an action is had for this purpose there must be kept in view that general as well as reasonable and just rule that whenever, in pursuance of law, the property of an individual is to be devested by proceedings against his will, a strict compliance must be had with all the provisions of law which are made for his protection and benefit, or the proceeding will be in-

effectual. * * * So, if a statute vests the title to lands appropriated in the state or in a corporation, on payment therefor being made, it is evident that, under the rule stated, the payment is a condition precedent to the passing of the title." Cooley, Const. Lim. p. 654. See, also, *Adams* v. *Railway Co.,* 39 Minn. 286, 39 N. W. Rep. 629, 1 L. R. A. 493, 12 Am. St. Rep. 644; *Theobold* v. *Railway Co.,* 66 Miss. 279, 6 So. Rep. 230, 4 L. R. A. 735, 14 Am. St. Rep. 564; *City of Omaha* v. *Kramer,* (Neb.) 41 N. W. Rep. 295, 13 Am. St. Rep. 504; *City of Denver* v. *Bayer,* 7 Colo. 113, 2 Pac. Rep. 6; *Church* v. *School Dist.,* (Wis.) 13 N. W. Rep. 272.

Under these cases, and the principles there sustained, we hold that the occupancy of the plaintiff's property for the purposes intended was a violation of the rights of the plaintiff guarantied him by the constitution and the statutes, for the prevention of which a preliminary injunction should have been granted. The possession taken for such purposes was in the nature of a continuing trespass. A multiplicity of suits must necessarily follow before adequate compensation could be awarded for such continued invasion of plaintiff's property rights. In view of these considerations, the remedy at law would be inadequate. 1 High, Inj. § 708; *Krueger* v. *Telephone Co.,* (Wis.) 81 N. W. Rep. 1047, 50 L. R. A. 298. It is contended that to grant preliminary injunctions in such cases will seriously retard public improvements, and delay the advantages to be derived therefrom to the public. We do not understand that it would to any serious extent. If those desiring to use private property for public use will follow the provisions of the law and the constitution, before endeavoring to use such private property, the delays or difficulties will be but slight.

Our conclusion is that the placing of the poles in the street in front of plaintiff's dwelling house in this case is an occupancy of the street inconsistent with the dedication of the street for the use of the public for travel; that it constituted an additional burden or servitude upon the street, not within the purposes of the dedication; that the public has an easement in the street for travel and passage thereon by any means not inconsistent with the rights of abutting property owners; that the placing of these poles in this street is an interference in some degree with travel on the street, and also encroaches upon the plaintiff's right to the free and unincumbered use of such street for all purposes.

We are not convinced by the argument advanced that the rights of the public and of abutting owners should be subjected to the occupancy of the streets for all public purposes under the new appliances of modern invention, which greatly facilitate communication between citizens of the same city or citizens of different cities. If the persons utilizing these new appliances were the only ones whose rights and interests were to be considered, there could be but one answer to the demand for a liberal construction of the terms of the grant for public use. But on the one hand are the interests of

those asking for the unrestricted use of the streets for intercommunication, and the unlimited use of the streets for all such purposes without compensation. On the other hand is the demand of the abutting property owner that his property be not sacrificed to such uses without compensation. His demand is safeguarded by the constitution expressly providing that his property shall not be taken or damaged without his consent and without compensation. We think the plaintiff's rights are within the provisions of the constitution. We are aware that plaintiff's damages cannot be large in the present case. But if 2 poles may be erected on this street in front of his residence, why not 20? We cannot sanction the violation of a constitutional provision because the damages may seem insignificant. The constitutional protection is not to be meted out in cases where pecuniary damages are large, and denied if they are small. The protection should follow a violation of any right therein defined. Some of the cases cited pertain to setting of poles in rural highways for telegraph purposes. A distinction is apparent between the use of a rural highway and a street, and is sometimes claimed between the use of the telephone and the telegraph. The cases are cited as analogous in principle to the case at bar. The decision, however, is not intended to cover any questions save the one involved, and that is the use of the telephone as set forth in the pleadings in this case, and any case cited not strictly in point is cited as argumentatively sustaining the contention advanced by plaintiff.

The order of the district court refusing a preliminary injunction is reversed, and that court is directed to grant the temporary relief demanded in the complaint. All concur.