[File No. 6080.]

BECKER COUNTY SAND AND GRAVEL COMPANY, a Corporation, Respondent, v. GEO. F. WOSICK, et al., as County Commissioners of the County of Walsh, et al., Appellants.

(245 N. W. 454.)

Opinion filed September 30, 1932.   Rehearing denied December 3, 1932.

*James Morris,* Attorney General, *Harold D. Shaft,* Assistant Attorney General, and *T. I. Dahl,* for appellants.

742

*Conmy, Young & Conmy,* for respondent.

744

CHRISTIANSON, Ch. J. Plaintiff brought this action to enjoin the defendants from carrying out certain pending proceedings to condemn certain land for a gravel pit under the provisions of § 20, chapter 159, Laws 1927. The plaintiff predicates its cause of action upon the proposition that the statute under which the defendants are proceeding is violative of certain provisions of the Constitution of the United States and of the Constitution of the state of North Dakota. The complaint shows that plaintiff has a proprietary interest in the gravel pit sought to be condemned and that the taking thereof for a public use in violation of constitutional guarantees will result in injury for which available legal remedies would not afford the plaintiff adequate relief. The defendants interposed a general demurrer to the complaint. The demurrer was over-ruled and the defendants have appealed. The sole question presented on this appeal is whether the statutory provisions under which defendants are proceeding to take the land in question for a gravel pit is or is not violative of rights guaranteed to the plaintiff by the Constitution of the United States and the Constitution of the state of North Dakota.

Chapter 159, Laws 1927, created the department of state highways, defined its powers and duties, provided for its government and imposed penalties for violations of the enactment. Section 20 of said chapter 159 empowers the state highway commission, among other things, to acquire and to condemn for the state, land necessary to secure gravel for the construction and maintenance of highways. It provides that the state highway commission "by resolution or order, may, on behalf of the state, and as a part of the cost" of construction or maintaining "purchase, acquire, take over or condemn under the right and power of the eminent domain, for the state, any and all lands which it shall deem necessary . . . in the . . . construction . . . or maintaining of a state highway;" also that "it may, by

the same means secure any and all materials, including . . . gravel . . . or lands necessary to secure such material. . . ." It further provides that when the state highway commission "shall determine by resolution or order that public exigency requires the taking of land or materials as aforesaid, it shall cause the same to be surveyed and described, and a plat thereof and the said description shall be recorded in the office of the register of deeds for the county wherein the same is located." It further provides that "if the state highway commission is unable to purchase such land . . . or materials . . . at what it deems a reasonable valuation, then the board of county commissioners of the county wherein such land . . . or materials . . . may be situated, on the petition of the state highway commission, shall proceed to ascertain and determine the damages and make awards in the same manner as provided by statute for lands taken for highway purposes as hereby modified or amended." It is further provided that "within 15 days after the filing of such petition with the county auditor, the board of county commissioners shall fix a time and place, not later than 60 days from and after the filing of such petition, for a hearing of all persons or parties interested or aggrieved by such taking." It is further provided that notice of time and place of hearing shall be published in the official newspaper of the county at least once a week for three successive weeks and that a copy of the notice "shall be served by the sheriff of the county upon all known owners residing or found within the county where such land or materials are situated, and upon the occupant of such land, not less than ten days prior to such hearing, by leaving a copy of such notice at the last known residence of such owner or occupant with a person of suitable age." Said section 20 further provides: "When the award of damages for the taking of land or materials, or both, shall have been completed by the board of county commissioners, the state highway commission shall pay or cause to be paid from the state highway fund into court for the benefit of the owners of land to whom such awards have been made by depositing with the clerk of court of such county, cash in the amount of such award or awards. Every owner entitled to such award before the same shall be paid to him by the clerk of court, aforesaid, shall sign and execute a receipt therefor, which receipt shall contain a description of the premises covered by the said award; and

such receipt shall be recorded in the office of the register of deeds for the county in which such land or lands is situated. As soon as such money shall be deposited in the office of the clerk of said court, aforesaid, the title to the land or materials aforesaid shall be and become vested in the state, provided, however, that all parties aggrieved by the estimate of damages and the awards aforesaid shall have like remedies provided by statute for appraisal of damage for land taken by counties for highway purposes."

It is the contention of the plaintiff that § 20, chapter 159, Laws 1927, violates section 14 of the Constitution of the state of North Dakota which reads as follows:

"Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner, and no right of way shall be appropriated to the use of any corporation, other than municipal, until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived."

In our opinion this contention is well founded. It will be noted that the constitutional mandate is: "Private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner." This provision is directly applicable to property sought to be taken for public use for highway purposes. Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838.

Section 14 of the Constitution was intended to guarantee to an owner of property the full right of ownership including possession and enjoyment rather than a right to redress for wrong committed in taking his property away from him. The constitutional mandate is not satisfied by the ascertainment of the amount of compensation and making the same a charge upon a state or municipal fund for which the credit of the state or the municipality is pledged. Martin v. Tyler, supra. The constitution guarantees to the owner something more than a right to recover judgment for the damages caused by the taking of his property or a recovery of the property itself after it has been taken; it

guarantees that his property shall not be taken or damaged even for a necessary public use "without just compensation in money being first made to, or paid into court for, the owner." Martin v. Tyler, supra. See also 20 C. J. pp. 835–839.

Section 14 of the Constitution was "calculated to protect property owners from injustice and wrong on the part of municipal or other corporations or individuals invested with the privilege of taking private property for public use, and should be given a liberal construction by the courts in order to make it effectual in the protection of the rights of the citizen." Donovan v. Allert, 11 N. D. 289, 91 N. W. 441, 58 L.R.A. 775, 95 Am. St. Rep. 720; 1 Lewis, Em. Dom. 2d ed. §§ 366, 389. And "the taking or damaging of private property for public use without the owner's consent is deemed so serious that payment therefor is a prerequisite to attempting to do so." This is so even though the ultimate right to take the property for the proposed public use is manifest. "This does not mean that it (the property) may first be appropriated, and paid for at the end of a suit for damages, but means that payment must precede the taking or damaging." Donovan v. Allert, 11 N. D. 289, 298, 91 N. W. 441, 58 L.R.A. 775, 95 Am. St. Rep. 720; 20 C. J. pp. 835, 836, 838, 839.

The protection afforded by § 14 of the Constitution is sufficiently broad to entitle the owner of the fee of premises dedicated for public use as a street to enjoin the erection of telephone poles thereon notwithstanding the city council having granted a franchise authorizing the construction and maintenance of a telephone system in the city and the use of the streets for such purpose, where the constitutional mandate has not been complied with, and there has not been paid to the owner in fee, or into court for him, compensation for the property taken. Donovan v. Allert, supra.

Clearly it was not the intention of the framers of the Constitution that private property might be taken for a public use and the owner of such property divested of title thereto by the determination of some administrative officer or board, and upon the payment into court for the owner of the amount of compensation determined by such officer or board. The constitutional requirement that compensation for private property taken for a public use shall be paid in advance of the taking is in harmony with the further requirement that, in case of dispute,

the amount of compensation shall be determined by a judicial tribunal (2 Nichols, Em. Dom. 2d ed. § 372); and in harmony with the theory that the order or decree which transfers the title of the property from the person by whom it is held to the public agency which is to control and operate it for the public use (upon the payment of the compensation fixed therein) is fundamentally a judicial act. The constitution says that before private property can be taken for public use just compensation must *first* have been made to or paid *into court* for the owner. The constitution which contains § 14 also creates the judicial system of the state, enumerates the courts thereof and defines in a general way the powers of such courts. North Dakota Const. §§ 85–120. When § 14 of the Constitution speaks of compensation being paid into court for the owner, it undoubtedly has reference to the compensation which has been determined in some proceeding had in and by the very court into which payment is to be made. There was no intention on the part of the framers of the Constitution that an administrative officer or board might be vested with power to determine the compensation, the pre-payment of which is made the basis for divesting the owner of his property. Under section 14 of the Constitution the owner of property sought to be taken for a public use is entitled as a matter of right to a judicial determination of the amount of compensation to be paid for such property unless he, in some manner, either expressly or impliedly, waives such right.

The statutory provision involved here does not merely provide a mode (incident to the laying out or establishment of a public improvement) whereby the amount of compensation is estimated or tentatively ascertained by an administrative board and the owner of the land given what amounts in effect to an offer which he may accept or reject, either expressly or impliedly, with the absolute right to a judicial determination of the amount of compensation in the event he does not waive such right. Under the express language of the statute involved here title to the land passes from the owner to the state immediately upon the deposit in court of the amount of compensation fixed by the board of county commissioners even though the owner rejects the amount of compensation offered and promptly prosecutes an appeal to the courts from the order of the county commissioners. This procedure is violative of the rights guaranteed to the owner of property by § 14 of the

state Constitution. Wulzen v. San Francisco, 101 Cal. 15, 35 Pac. 353, 40 Am. St. Rep. 17; Steinhart v. Superior Ct. 137 Cal. 575, 70 Pac. 629, 59 L.R.A. 404, 92 Am. St. Rep. 183; 10 Cal. Jur. p. 416. It also in effect constitutes the Board of County Commissioners a court and gives to the order of such board a determinative effect which section 14 of the Constitution clearly and unmistakably says can be had only by the judgment of a court of competent jurisdiction,—that is, it gives to the order of such board and the payment into court of the amount of compensation fixed therein, the effect of divesting the owner of private property of title thereto and vesting the same in the public agency which is to control and operate it for the proposed public use. Wulzen v. San Francisco, supra.

It does not follow, however, that because the provisions of section 20 of the act are violative of the constitution that the entire statute must fail. On the contrary, we are of the opinion that the provisions of section 20 in question here may be stricken without impairing the remainder of the act. 6 R. C. L. pp. 121–127. The new procedure provided in § 20 for the taking of property required for highway purposes is merely incidental to the general and primary purposes of the statute. The method of condemning property for highway purposes provided by other provisions of law is still available. Sheridan County v. Davis, 61 N. D. 744, 240 N. W. 867. The provision in section 20 which is violative of the Constitution may be stricken from the act and there still remains a complete and workable scheme of legislation wholly unaffected in efficacy and purpose by the part eliminated. It is not at all reasonable to assume that the provisions stricken formed any inducement to the law-making assembly in the enactment of the statute as a whole. On the contrary, we think the only reasonable assumption is that the lawmakers would have enacted the statute with the unconstitutional provision eliminated therefrom.

We find it unnecessary to determine whether the statute is vulnerable to any of the other constitutional objections urged against it. These objections are all leveled at the statutory provision which we hold to be violative of section 14 of the Constitution; and the objections are all such as can readily be obviated without in any manner impairing the efficacy of the statute, in event the legislature sees fit to enact further legislation along similar lines.

It follows from what has been said that the order appealed from is correct. It must be and is affirmed.

BURKE, BIRDZELL, NUESSLE and BURR, JJ., concur.

(On Petition for Rehearing.)

CHRISTIANSON, Ch. J. Appellants have petitioned for a rehearing. Their first contention is that the decision in this case is incorrect in holding that under § 14 of the state Constitution the owner of property sought to be taken or damaged for a public use is entitled as a matter of right to a judicial determination of the amount of compensation. It is said that this holding is contrary to a rule announced by this court in Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838, and that "either the opinion should be re-written so as to over-rule Martin v. Tyler, or Martin v. Tyler should be followed and the trial court reversed." In view of the nature of the contention thus advanced and the importance of the principle involved, we have carefully re-considered our former opinion in this case and the decision in Martin v. Tyler, and have reached the conclusion that there is no conflict between any rule announced in this case and any authoritative rule announced in Martin v. Tyler.

Martin v. Tyler involved the constitutionality of a so-called drainage statute. Laws 1893 c. 55. That statute made provision for the appointment of a board of drain commissioners. Such board was authorized to receive and hear applications for the establishment and construction of drains. Upon presentation of a written application for the construction of a drain, signed by a designated number of freeholders in a specified territory, the board of drain commissioners was required to make a preliminary inspection and survey; (Id. § 5) and, said the statute, "if the commissioners shall determine that such drain is necessary and practical they shall establish the same as hereinafter provided." (Id. § 6).

The statute, also, provided: "If, within twenty days after such determination, all of the persons on whose lands the proposed drain is to be placed shall not have executed a release of right of way and all dam-

ages on account thereof, the board of county drain commissioners shall appoint a time and place of hearing upon the application, which shall not be less than ten nor more than twenty days thereafter, and shall immediately make application to the district court of the county to ascertain the necessity for such drain and for taking private property for the use and benefit of the public for the purpose thereof, and the just compensation to be made therefor. . . ." (Id. § 7).

Provision was made for service of notice of the hearing in the district court. (Id. § 8).

As regards the conduct and scope of the hearing, the statute provided:—

". . . The person or persons interested in the property sought to be taken or damaged may answer such application and may waive a jury trial, but unless such trial be so waived, the trial must be by jury and the jury shall determine:

"First. Whether such ditch will be conducive to the public health, convenience or welfare.

"Second. Whether the route thereof is practicable.

"Third. Amount of damages allowed to any person or persons or corporations.

"And the court shall enter the proper judgment thereon. The damages allowed shall be irrespective of the benefits which the particular parcel of land will receive by the construction of such ditch, but such land shall be assessed for such benefits. . . . (Id. § 9).

The statute further provided:

"An order drawn by the board of county drain commissioners on the treasurer of the proper county for the amount of any damages awarded from the location and construction of the said drain and tendered to the person entitled to such damages shall be deemed a sufficient security for the amount thereof. If the owner of any lands upon which any damages may be awarded be unknown, and such lands be not occupied, an order for the amount therefor shall be drawn, payable to the owner of the description of land upon which such damages were awarded, describing such lands by their legal subdivision in such order, which order shall be delivered to the county auditor to be held by such auditor, to be delivered to the owner of such lands when called for, or

otherwise lawfully demanded, and the same shall thereby be deemed lawfully tendered to the owner of such lands; Provided, The amount chargeable against such lands on account of the costs of construction of the drain, if less than the damages, shall apply in payment of the damages, and if equal to or more than such damages, the same shall apply to the full amount thereof, and for the purpose of accuracy in keeping the account, the board of county drain commissioners shall furnish to the county treasurer, or other officer having the collection of the drain tax, a memorandum of the amount of the damages, and such treasurer or other officer shall credit the amount thereof upon the tax when he receives the tax roll; or so much thereof as may be equal to the tax, and such memorandum shall be a voucher for so much money as paid by such treasurer, and shall be allowed him on settlement." (Id. § 10).

The statute further made provision for assessment of the cost of the construction of the drain against the several pieces or parcels of land benefited by such construction. It also made provision for hearing on the assessment and the apportionment thereof, so the owners of land against whom any assessment was made were afforded an opportunity to present such objections and complaints as they might have as regards the assessment. (Id. §§ 14–16).

In Martin v. Tyler, the validity of the drainage statute was attacked on several grounds. The court held that the provisions of § 10 of the act permitting payment for damages to be made by an order drawn by the drain commissioners on the county treasurer to be violative of the guarantees of § 14 of the state constitution; that this section required just compensation for private property taken for public use to be made in money and that payment by order drawn upon the county treasurer was not such payment as the constitution required. The court further held certain provisions in the statute providing for the issuance of bonds by the county to cover costs of drains to be violative of § 185 of the constitution.

As regards the specific proposition wherein the petition for rehearing says that Martin v. Tyler announced a rule inconsistent or in conflict with that announced in the opinion in this case, it was said in Martin v. Tyler:

"It is very forcibly pressed upon us by learned counsel that the

drainage act violates this provision (section 14 N. D. Const.) in the following particulars: . . ."

"Because the compensation is not ascertained by a jury. Under § 9, the jury determines the 'amount of damages allowed to any person,' but the damages allowed shall be 'irrespective of benefits.' The benefits are assessed by drain commissioners. The 'just compensation' is the amount of damage, if any, remaining after benefits have been deducted. This balance the jury is not permitted to find.

"Section 14, of the constitution of North Dakota was copied literally from § 14, art. 1, of the constitution of California adopted in 1879. . . ."

"Section 14, of our constitution divides naturally into two parts. The first reads: 'Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner.' As originally reported by the judiciary committee of the California constitutional convention of 1879, the section contained nothing more. . . .

"The term 'just compensation' had already been defined in California to be that compensation which was based upon damages sustained and benefits received. . . .

(Citation of California cases).

"These cases make it reasonably certain that the words 'just compensation,' as used in the California constitution, and later in our own constitution, mean the excess of damages sustained over benefits received. . . .

"We do not think that the manner in which compensation is ascertained under the statute is any violation of § 14 of the constitution. It is true that the ascertainment of just compensation is a judicial proceeding, but a party has no inherent right to have such compensation fixed by jury. . . .

"The original provision in said § 14 of the constitution, as reported in the California convention, contained no reference to a jury. That was added in an amendment which created an exceptional class of cases, and, in the connection in which it was placed, we think it applied only to such exceptional cases. The entire section speaks of two different characters of compensation. First it speaks of 'just compensation' as applied generally. It then creates the exceptional class, and

for that class it demands 'full compensation,' and adds 'which compensation shall be ascertained by jury.' Ordinarily, these words would not include both characters of compensation but would include that last under discussion, to-wit, full compensation, and such we think was the intention. If we are correct in this, it follows that under our constitution, whenever private property is appropriated for right-of-way by a corporation other than municipal, the compensation must be ascertained by a jury, while in all other cases a jury is unnecessary. But it would not follow that a provision for a jury in such other cases would be unconstitutional. The legislature may not curtail the rights of the citizen below the limit fixed by the constitution, but they may properly expand such rights. We see no violation of any constitutional provision, and no possibility of injustice to the property owner, *in having the total damages, in cases of this character, ascertained by a jury, and having the benefits assessed and the balance struck by the other tribunal, to-wit, the drain commissioners.* This principle was involved and sustained in Cleveland v. Wick, 18 Ohio St. 303."

It is said in the petition for rehearing that this court in that portion of the opinion in Martin v. Tyler quoted above "squarely held that it was not necessary for *all* of the elements of just compensation to be ascertained in court." It is further said: "This is the nub of our contention. If a material part of the just compensation can be ascertained by some tribunal other than a court and not violate Article 14 why cannot all of it be so ascertained?"

This argument is, in our opinion, predicated upon a premise which does not exist, and presents for determination a question which is not involved, in this case; neither was it involved in Martin v. Tyler. We have quoted at some length the provisions of the statute involved in Martin v. Tyler. That statute explicitly provided that where private property was taken or damaged for the construction of a drain the question of the amount of damages to be allowed "to any person or persons or corporation" must be submitted to and determined by a jury; and that damages must be allowed by the jury "irrespective of the benefits which the particular parcel of land" would receive by the construction of the drain. In the opinion in Martin v. Tyler it was not only recognized but specifically stated "that the ascertainment of just compensation is a judicial proceeding" and stress was laid upon

the fact that the statute under consideration there required "the total damages to be ascertained by a jury" and that it was only the benefits resulting from the construction of the drain that was permitted to be found by the drain commissioners and the balance struck by the drain commissioners by deducting the amount of benefits from the amount of total damages which the jury had determined. The statute under consideration in this case does not purport to require either the "total damages" or the "just damages" to be assessed by a jury or even to be determined by a court before the title of the owner is divested and his property taken or damaged. In the instant case there is no claim that there were any resulting benefits. So far as compensation is concerned it involves solely the damages sustained by the taking of the property. If the order entered under the statute is valid, the property has been appropriated, and the owners divested of title, without even an opportunity for a determination by a judicial tribunal. It is rather difficult to see how it can be seriously contended that there is any parallel between the proceedings involved in Martin v. Tyler and those involved in this case.

We do not, however, deem it necessary in this case to either approve or disapprove of that portion of the opinion in Martin v. Tyler on which reliance is placed in the petition for rehearing. The court had already decided that the statute involved was unconstitutional and must be stricken down as a whole before it reached the question of the validity of the proceeding which provided for the determination of benefits and the levy of assessment against the tracts benefited by the drain, and the deduction of such assessment from the amount of damages found by the jury and what is said as regards that question in Martin v. Tyler is clearly obiter. Furthermore, the characterization of the provisions of the statute involved in Martin v. Tyler was not strictly accurate. In its opinion in that case the court assumed that the statute provided for a deduction of benefits found by the drain commissioners from the total damages found by the jury. An examination of the provisions of the statute which we have quoted above discloses that the statute made no such provision. What the statute did provide was that where a part of a tract of land had been taken or damaged in the construction of a drain and the remainder of the tract was benefited by the construction of the drain, that the amount of

the special assessment or "drain taxes" assessed against the tract remaining might be deducted from the amount of damages awarded for the part that had been taken or damaged. While there is some similarity between the set-off of benefits resulting from the construction of an improvement against damages resulting from the taking of land for such construction and the levy of a special assessment against the remainder of a tract of land, a part of which has been taken or damaged for a public improvement, and although it is possible that in certain cases the results of the two will be precisely the same, "there are however marked differences between the two forms of the exercise of governmental power. Benefits can under some circumstances be set off by private corporations which have been authorized to take land by eminent domain; but assessments under the taxing power can be levied only by the state or by municipal corporations. When the benefits are the subject of special assessment those whose land is not taken may be obliged to pay, and those a part of whose land is taken may be obliged to pay an assessment greater in amount than their compensation. Neither of these results could occur if the benefits were merely the subject of set-off. So also the actual benefits in each case must be ascertained for the purpose of set-off, whereas the benefits may be determined for the purposes of assessment by some general rule of proportion." (Nichols, Em. Dom., 2d ed. § 255). In short, the deduction of benefits from damages sustained by the taking of private property for a public use is an incident in the exercise of the power of eminent domain, while the levy of a special assessment, such as the drain tax involved in Martin v. Tyler, is an exercise of the power of taxation. 26 R. C. L. p. 23. See also 1 Lewis, Em. Dom. 3d ed. § 5; Hamilton, Special Assessments, §§ 55 et seq.

The acts of the drain commissioners, under the statute involved in Martin v. Tyler, in ascertaining benefits and levying a special assessment was in no sense a part of the condemnation proceedings. These acts occurred in a proceeding separate and distinct from the condemnation proceeding and before a different body exercising a wholly different governmental power from that exercised by the court in the condemnation proceeding.

At one time there was some tendency to confuse and fail to distinguish the inherent differences between the taking of private property

for a public use and the levy of a special assessment to pay for a local improvement; and in certain instances the levy of special assessments was asserted to be an exercise of the power of eminent domain. This confusion was set at rest by the decision of the New York Court of Appeals in People ex rel. Griffin v. Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266. In the opinion in that case the court pointed out the distinction between the powers involved in the levy of a special assessment and the taking of private property for public use in language which has since become almost axiomatic. The court said:

"Private property may be constitutionally taken for public use in two modes: that is to say, by taxation and by right of eminent domain. These are rights which the people collectively retain over the property of individuals, to resume such portions of it as may be necessary for public use. . . .

"Taxation exacts money, or services, from individuals, as and for their respective shares of contribution to any public burthen.

"Private property taken for public use by right of eminent domain, is taken not as the owner's share of contribution to a public burthen, but as so much beyond his share.

"Special compensation is therefore to be made in the latter case, because the government is a debtor for the property so taken; but not in the former, because the payment of taxes is a duty and creates no obligation to repay, otherwise than in the proper application of the tax.

"Taxation operates upon a community or upon a class of persons in a community and by some rule of apportionment.

"The exercise of the right of eminent domain operates upon an individual, and without reference to the amount, or value exacted from any other individual, or class of individuals.

"Keeping these distinctions in mind, it will never be difficult to determine which of the two powers is exerted in any given case. . . .

"The validity of the assessment in question, therefore, can not be maintained as an exercise of the power of eminent domain; and it can not be maintained at all unless it be a legitimate mode of taxation." 4 N. Y. 422–425, 55 Am. Dec. 266.

The court held a special assessment for a local object to be an exercise

of the taxing power. People ex rel. Griffin v. Brooklyn, 4 N. Y. 425, et seq., 55 Am. Dec. 266.

In this state it is the established rule that special assessments involve solely the exercise of the taxing power but that the exercise of that power is not subject to the provisions of the constitution relating to general taxation. Rolph v. Fargo, 7 N. D. 640, 76 N. W. 242, 42 L.R.A. 646; Webster v. Fargo, 9 N. D. 208, 82 N. W. 732, 56 L.R.A. 156.

It will be noted that in Martin v. Tyler the decision in Cleveland v. Wick, 16 Ohio St. 303 is cited in support of the proposition that "just compensation" may be ascertained by deducting from the damages found by the jury the benefits found by the drain commissioners. The case cited, however, did not involve a deduction of benefits, or even a deduction of a special assessment. In that case the city of Cleveland, having established a new street over lands belonging to Wick, regularly condemned the same and paid him the full compensation for the land so taken. 18 Ohio St. 303. Some time after the land had been taken and paid for, the city of Cleveland levied a special assessment upon all lands fronting on the street, including other lands belonging to Wick, to reimburse the city for the expenditure made. The Ohio constitution relating to eminent domain provided that when private property was taken for public use compensation therefor must first be made in money and that such compensation must "be assessed by a jury, without deduction for benefits to any property of the owner." 18 Ohio St. 305, 306. The Ohio constitution recognized the practice of laying special assessments upon property in the vicinity of local improvements to defray the expense of such improvements. (18 Ohio St. 306, 308). It was conceded that the special assessment had been made in conformity with the statute; but it was contended that the constitutional provision which required that when private property was taken for a public use compensation should be paid "without deduction for benefits to any property of the owner," inhibited the levy of a special assessment against any lands belonging to a person part of whose property had been taken for the construction of the local improvement. In short, the question presented in that case did not involve a deduction of benefits or even a deduction of a special assessment from the amount of damages; but it involved solely the question of the power of taxation,

that is, whether the provision in the constitution requiring damages to be paid as assessed by the jury *"without deduction for benefits to any property of the owner"* deprived the legislature of power to authorize the imposition of a special assessment for a local improvement upon property belonging to a person who happened to be the owner of some other property which had been taken under the power of eminent domain for the construction of the improvement.

The differences between the question involved and decided in Cleveland v. Wick, and that discussed and sought to be determined in Martin v. Tyler, are obvious. It is indeed difficult to see how the rule announced in the former case could be said to support a rule that in ascertaining "part compensation," benefits found, or special assessment made, by an administrative board may be deducted from the amount of damages assessed in a condemnation suit.

It is rather significant that when the legislative assembly of this state immediately following the decision in Martin v. Tyler, enacted a new drainage statute, it did not re-embody the provision contained in the former statute authorizing the deduction from the amount of damages for the taking of property of the amount of the special assessment or drain tax levied upon other property belonging to the owner of property taken. On the contrary, the legislature expressly provided that title to the right-of-way for the construction of any proposed drain, if not conveyed by the owner, should be acquired in the manner then prescribed by law, that is, by condemnation proceedings. Laws 1895, chap. 51, § 6. It further provided that "upon the assessment by the jury, court or referee, of the amount of damages to which the respective owners of the right-of-way to be used for the construction of any proposed drain, are to be entitled" (Id. § 7), the board of drain commissioners should assess the cost of acquiring the right-of-way, in the manner provided in the act, against any municipal or political corporations, or any railroad companies that might be liable to assessment, and to the pieces or tracts of land liable to pay, by reason of benefits to accrue thereto (Id. § 9) and that the board of drain commissioners might issue warrants in a sum sufficient to pay the damages for the right-of-way and negotiate such warrants "and pay into court for the benefit of the owners of the right-of-way" the amount of damages to which each is entitled according to the assessment of the amount of

damages. It further provided "if warrants are not issued, or if issued, cannot be negotiated, no further proceedings shall be taken until the special tax levied to pay for the right-of-way is collected and paid into the court for the benefit of the owners of the right-of-way." Laws 1895, chap. 51, § 7.

This statute recognized the fundamental differences between the taking of private property for a public use and the ascertainment of the compensation to be paid to the owner therefor, and the levy of a special assessment upon properties benefited by a local improvement to pay for the improvement. In short, the statute recognized the differences between the exercise of the power of eminent domain under § 14 of the constitution, and the exercise of the taxing power in the levy of a special assessment. While changes have been made in the drainage statute these provisions have remained in force substantially as enacted in 1895, and so far as we can ascertain no statute has been enacted since the decision in Martin v. Tyler, which provided for the deduction of benefits or the set off of a special assessment against the damages assessed in court for the taking or damaging of private property for a public use.

What has been said here has been said for the purpose of demonstrating that in the very nature of things the question which counsel for the appellant here says was decided in Martin v. Tyler contrary to what was held in the former opinion in this case could not have been involved and decided therein. "The positive authority of a decision is co-extensive only with the facts on which it is made." Ogden v. Saunders, 12 Wheat. 333, 6 L. ed. 647. The question of deduction or set-off of benefits, or the set-off of special assessments against damages for the taking of private property for public use is one of such great importance and difficulty (2 Nichols, Em. Dom. 2d ed. §§ 255 et seq.; 2 Lewis, Em. Dom. 3d ed. § 704; 1 Page & Jones, Taxation by Assessment, §§ 63–77; note in 17 A.L.R. p. 64; Covington v. Worthington, 88 Ky. 206, 10 S. W. 790, 11 S. W. 1038) that it ought to be determined only in a case where it is directly involved and fairly presented for decision. This case does not involve a set-off or deduction of benefits. It involves solely the taking of private property for a public use where, in the very nature of things, there could be no benefits or special assessment for benefits.

The petition for rehearing also assails the following statement in the former opinion:

"When § 14 of the Constitution speaks of compensation being paid into court for the owner, it undoubtedly has reference to the compensation which has been determined in some proceeding had in and by the very court into which payment is to be made. There was no intention on the part of the framers of the Constitution that an administrative officer or board might be vested with power to determine the compensation, the prepayment of which is made the basis for divesting the owner of his property."

As respects this statement it is said in the petition for rehearing:

"This, we believe to be an unjustified elaboration and extension of the constitutional language. The constitutional language requires only that 'just compensation' shall be ascertained and that it shall be paid into court before the property is taken. The authorities hereinbefore referred to establish the proposition that 'just compensation' is ascertained under this statute by a proper tribunal. The requirement then is that this 'just compensation' must be paid into court before title may be taken."

The authorities to which reference is made in the petition for rehearing involved constitutional provisions fundamentally different from § 14 of the constitution of North Dakota. Many of the authorities arose under constitutions where the legislature had power to create judicial tribunals with power to hear and determine any and all judicial questions that might arise in a condemnation proceeding, and where the provision relating to eminent domain merely provided that private property should not be taken or damaged for public use without just compensation and without any intimation that the condemnation proceeding must be had in court, thus leaving to the legislature full power to prescribe, or even create, the tribunal by which compensation might be determined.

But in this state the legislature is without power to create tribunals to determine any judicial question that may be involved in a condemnation proceeding. The Constitution of North Dakota expressly provides:

"The judicial power of the state of North Dakota shall be vested in a supreme court, district courts, county courts, justices of the peace,

and in such other courts as may be created by law for cities, incorporated towns and villages." N. D. Const. § 85.

This constituional provision inhibits the legislature from abolishing any of the courts enumerated therein or from diminishing or increasing their jurisdiction (McDermont v. Dinnie, 6 N. D. 278 69 N. W. 294); it also inhibits the legislature from conferring upon a ministerial or administrative official or board power which the constitution has conferred upon the courts. State ex rel. Standard Oil Co. v. Blaisdell, 22 N. D. 86, 132 N. W. 769, Ann. Cas. 1913E, 1089. See also 1 Elliott, Roads & Streets, 4th ed. § 313.

It will thus be seen that when § 14 of the state constitution refers to a court for the ascertainment of compensation, and into which compensation may be paid before private property is taken for a public use, the framers of the Constitution could have had in mind only one court, namely, the district court.

Section 14 of the Constitution of North Dakota was borrowed from California. In the decision in Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838, supra, it was stated: "Section 14 of the Constitution of North Dakota was copied literally from § 14, art. 1, of the Constitution of California adopted in 1879." (4 N. D. 293, 60 N. W. 392, 25 L.R.A. 838). The North Dakota Constitution was framed and adopted in 1889. When it was adopted in this state the provision in the California Constitution had already been construed by the Supreme Court of that state. In Weber v. Santa Clara County, 59 Cal. 265 (decided in July, 1881), the Supreme Court of California, in construing and applying the constitutional provision of that state said: "The constitution contemplates and provides for a proceeding in court in all cases where private property is sought to be taken for public use, and it prohibits any other proceeding to that end." See also 13 Cal. Jur. p. 316. The court further held that under such constitutional provision the owner of private property taken or damaged for a public use is entitled in all cases "to a jury trial for the purpose of ascertaining the amount of damages which he will sustain by the appropriation of his property to public use." The right of a jury trial in all condemnation cases has been re-affirmed by the California court in several later cases. 10 Cal. Jur. 365; Wilcox v. Engebretsen, 160 Cal. 288, 116 Pac. 750; Los Angeles v. Zeller, 176 Cal. 194, 167

Pac. 849; East Bay Municipal Utility Dist. v. Railroad R. Commission, 194 Cal. 603, 229 Pac. 949.

Inasmuch as the constitutional provision had been construed by the court of last resort of California before it was adopted in this state it must be presumed that it was adopted in this state with the construction which had been placed upon it by the Supreme Court of California. 6 R. C. L. 54.

It is true this court, in its opinion in Martin v. Tyler, 4 N. D. 278, 60 N. W. 392, 25 L.R.A. 838, supra, expressed the view that a trial by jury was guaranteed by § .14 of the constitution only in cases where property was sought to be appropriated for right-of-way by a corporation, other than municipal. This, however, was not the construction which the California Supreme Court had placed upon the section. As said, that court had held that the right of trial by jury was guaranteed in all cases. Apparently the attention of this court was not called to the construction which had been placed upon the section by the California Court before it was adopted in this state. And, has already been noted, the question as to whether the amount of compensation or any of the elements involved in the compensation may be determined by some body other than a court, was not involved, or presented for decision in Martin v. Tyler. Neither was the question as to the right of trial by jury involved, as the court had already held the entire statute to be null and void before it attempted to decide these questions and what is said regards the same was obiter. We adhere to the views expressed in the former opinion; § 14 of the constitution entitles the owner of private property sought to be taken for a public use to a determination of the question of damages in a district court unless he waives such right.

It does not follow, however, that the legislature may not provide for a preliminary estimate or determination of the amount of such compensation by an administrative board; and, of course, if such estimate or determination is accompanied by a tender which is accepted by the owner, either expressly or impliedly, that is an end of the matter. To what extent and in what circumstances the legislature may prescribe that action or non-action of an owner shall be deemed an acceptance of the amount of the compensation so determined and tendered, or be deemed a waiver of a right of trial in court, or by a

jury, are questions not involved on this appeal, and ones upon which we express no opinion.

It has been suggested that the only provision required to be stricken from the statute involved in this case is the one which provides that "the title to the land or materials . . . shall be and become vested in the state" as soon as the amount of the award or awards made by the board of county commissioners shall be deposited with the clerk of court; and that with this provision stricken the remainder of the procedure prescribed in the statute may remain in full force and effect. We have carefully considered this question but have reached the conclusion that this provision is such a vital part of the prescribed procedure that we would not be warranted in saying that this provision did not furnish, to an appreciable extent, the inducement for the passage of the act; and, hence, it cannot be presumed that the legislature would have enacted the procedural provisions without the portion which is so required to be stricken. Whether the procedure would or would not be valid if such provision were eliminated from the statute we do not determine. The petition for a rehearing is denied.

BURKE, BIRDZELL, NUESSLE and BURR, JJ., concur.