[File Nos. 6718, 6719]

FRANK A. DONALDSON, Respondent, v. CITY OF BISMARCK, a Municipal Corporation, Appellant.

(3 NW(2d) 808)

594

Opinion filed March 16, 1942.   Rehearing denied April 10, 1942

*Hyland & Foster,* for appellant.

*George S. Register,* for respondent.

CHRISTIANSON, J. The plaintiff brought two actions against the defendant for damages alleged to have been sustained by reason of the establishment, maintenance, and operation by the defendant of a public dump near the home owned and occupied by the plaintiff. In one action damages are sought for permanent injuries to the real property, and in the other action damages are sought for the annoyance, inconvenience, and discomfort caused the plaintiff as a result of the establishment, maintenance, and operation of said public dump.

The defendant interposed identical answers in each of the actions. In such answers it admits that it has established the dump as set forth in the complaint; and that it owns the land on which the dump has been established. It alleges that in establishing such dump the defendant exercised governmental functions. It denies that the plaintiff has been damaged and alleges that the plaintiff has suffered no damage by reason of the establishment and operation of the dump. As a further defense, it is alleged that simultaneously with the commencement of

this action and service of summons and complaint therein upon the defendant, the plaintiff commenced another action "bearing the same title and between the same parties wherein the damages alleged are based upon the same allegations as contained in the complaint to which this answer is filed; that by reason of the aforesaid facts there is another action pending between the same parties, and is the same cause, and that the plaintiff is thereby barred from maintaining this action."

When the cases were called for trial it was stipulated, "that the two actions be consolidated and tried as one case." Thereafter, and at the commencement of the trial, defendant's counsel moved the court to strike the complaint in the action wherein damages are sought for annoyance, inconvenience and discomfort "on the ground and for the reason that the damage is the same damage as claimed in a complaint alleging damage to real property, and that only one form of damages can be recovered, and that is permanent damages to the real estate."

The consolidated case was tried to the court without a jury. The trial court prepared and filed a memorandum opinion wherein he analyzed the evidence at some length, and announced as his conclusions that the defendant city had established and maintained a nuisance, and that such nuisance has lessened the market value of plaintiff's real property in the sum of $3,500, has caused him inconvenience and discomfort and interfered with his occupancy and use of the premises, and has lessened the rental value of the premises at least $15 per month from the time of the establishment of the nuisance in January, 1939, and that, hence, plaintiff has sustained damages in the sum of $250 in addition to the lessened market value of the real property, "making a total damage of $3,750 for which judgment may be entered." Thereafter, findings of fact, conclusions of law and order for judgment were duly signed and filed in each of the two cases. In the action in which damages were sought for permanent injuries to the real property, plaintiff was awarded $3,500 as and for damages, and in the other action,—in which damages were sought for annoyance, inconvenience, and discomfort,—plaintiff was awarded $250 as damages. Judgments were entered accordingly and the defendant has appealed from the judgments and demanded a trial anew in this court.

The evidence shows that the plaintiff is, and for more than sixteen

years past has been, the owner of a 10-acre tract of land situated approximately one mile north of the North Dakota State Capitol grounds. He built his home on this tract in 1915 and has resided there continuously from that time up to the trial of this action. He constructed substantial improvements. The improvements were described by the trial court in its memorandum decision as follows:

"The house is quite a large building, 33 by 43 on the outside. The plaintiff and his family first resided in the basement until the main part of the house was completed. . . .

"The basement is partly below and partly above the ground. It is substantially built of cobblestones and cement extending to the windows of the main living rooms. From there on the material is tile with a cement coating outside, and plastered inside. Above the living quarters is an attic which is unfinished except for windows. The house is heated with hot water furnace and radiators. There is an electric fireplace in the house. The house is lighted by a wind electric plant. Another windmill furnishes water from a well 85 feet deep. This well is curbed with brick, and near it is an underground cement tank from which water is furnished throughout the house. In addition to the house, well, and two windmills, there is an icehouse, garage, and another building used as a second garage and as a blacksmith shop, measuring about 20 by 40 feet. The place has a nice grove of trees planted by the plaintiff. The property is located exactly one mile north of the North Dakota State Capitol grounds."

In October, 1938, the defendant city purchased 80 acres of land adjoining the plaintiff's 10-acre tract on the east. This 80-acre tract was purchased for the purpose of establishing thereon a city dump. Such dump was established about January 15th, 1939, and has been operated and maintained there ever since. The plaintiff protested against the establishment of such dump, by formal written protest presented to the Board of City Commissioners some time before the city purchased the ground, and he again protested at, or about, the time the dump was established and upon at least one later occasion. Notwithstanding such protests, the dump was established, and, as said, has been maintained continuously since it was established.

The evidence clearly shows that the dump as established and main-

tained by the defendant not only has interfered with the comfort and safety of the plaintiff, but that it has directly injured his property. Several witnesses testified to the extent and nature of such injury. The trial judge also viewed the premises in accordance with the stipulation of the parties. The action was brought and tried on the theory that the injury caused by the establishment and maintenance of the dump is of such permanent character that all damages past, present and prospective are recoverable in one action. 46 CJ 802–804; Sutherland, Damages, 4th ed. §§ 1042 et seq.; 1 Am Jur pp. 499–502, Actions, §§ 118–121. Both parties accepted this theory as the correct one. All evidence was introduced on this theory; and it will be noted that defendant's objection to the introduction of proof at the commencement of the trial was based on this theory. Accordingly, in light of the election of the parties and the theory adopted by them, as well as the facts established by the evidence, including the nature and extent of the injury to plaintiff's property, the case will be determined on the theory so adopted by the parties and the trial court. 46 CJ pp. 802 et seq.; 5 CJS pp. 175 et seq.; 1 Am Jur p. 502, Actions, § 121. The evidence establishes beyond all doubt that plaintiff's real property—his home—has been greatly damaged by the establishment and maintenance of the city dump. "An owner of land, as an incident of his property, is entitled to use and enjoy such land free from the pollution of air thereupon so as to amount to a nuisance." Ingmundson v. Midland Continental R. Co. 42 ND 455, 173 NW 752, 6 ALR 714; 1 Lewis, Eminent Domain, 3d ed. pp. 451 et seq.; Moody v. Saratoga Springs, 17 App Div 207, 45 NYS 365; Wood, Nuisances, 2d ed. p. 868. The evidence shows that as a result of the operation of the dump, the atmosphere over plaintiff's premises has become impregnated with ashes, smoke, noxious gases and odors, to such an extent that the property has become wholly undesirable and largely worthless for dwelling purposes. The evidence further shows that the damages sustained by the plaintiff are special and peculiar to himself as distinguished from that suffered by the public at large.

In declaring that private property shall not be taken or damaged without just compensation having been first made, the Constitution "secures to owners, not only the possession of property, but also those

rights which render possession valuable." Pennsylvania R. Co. v. Angel, 41 NJ Eq 316, 329, 7 A 432, 56 Am Rep 1.

It is clear that the invasion of plaintiff's property by the pollution of the air, as alleged and proven in this case, constituted a damaging of such property within the purview of Section 14 of the Constitution of this state which provides that "private property shall not be taken or damaged for public use without just compensation having been first made." 1 Lewis, Eminent Domain, 3d ed. pp. 451, 661; 18 Am Jur p. 789, Eminent Domain. Indeed, it has been said that such invasion constitutes a taking of property. 1 Lewis, Eminent Domain, 3d ed. p. 661. It is conceded by the defendant that plaintiff's real property has been damaged and that he is entitled to be compensated for such damages. In defendant's brief it is said: "The plaintiff sued the defendant for damages to certain real estate on account of the maintenance of a public dump ground in the vicinity of the land. The defendant does not deny liability, but the damages assessed are claimed to be excessive. . . .

"The defendant admits some liability, but claims that the damages are excessive."

The defendant contends that the plaintiff is entitled to recover only for the injury to the real property; that the measure and the limit of plaintiff's damages is the depreciation in market value of such real property, and that plaintiff is not entitled in addition thereto to recover compensation for any inconvenience, discomfort, or annoyance to which he may have been subjected.

We need not consider whether in a case where acts which result in the taking or damaging of property, also cause injuries to the plaintiff personally, only one action will lie, and whether all damages of whatever nature must be claimed in one action; for in this case the two actions were consolidated by agreement of the parties, and the issues presented in the two actions were in effect merged and united and the power and jurisdiction of the court became the same as if one action had been brought in the first instance containing all the issues of the consolidated case. 1 CJ 1135; 4 Enc Pl & Pr p. 701; Phillips v. Mitchell, 68 Okla 128, 172 P 85; Capron v. Adams County, 43 Wis 613; E. E. Atkinson & Co. v. Neisner Bros. 193 Minn 175, 258 NW

151. After the consolidation of the action by agreement of the parties, the defendant is in no position to urge that a cause of action was split in any of the consolidated actions. E. E. Atkinson & Co. v. Neisner Bros. supra. But the defendant is not precluded from asserting that plaintiff's recovery in the consolidated action must be limited to the depreciation in value of the real property, and that plaintiff is not entitled to recover in addition thereto compensation for inconvenience, discomfort, and annoyance.

Evidence was adduced by both parties to show the depreciation in the market value of the real estate caused by the establishment and maintenance of the dump and the pollution of the air resulting from its operation. Plaintiff also introduced evidence to show the damage he had sustained personally up to the time of the trial, by the establishment, maintenance, and operation of the dump. Such evidence related to the inconvenience, discomfort, and annoyance the plaintiff had sustained by virtue of the smoke and noxious odors which, according to the evidence, caused not only annoyance, inconvenience, and discomfort, but resulted also in impairment and destruction of food and of clothing, —especially clothing that had been laundered and placed on the clothesline to be dried.

In considering the question of damages the trial court in his memorandum opinion said, in part:

"There is no doubt but that plaintiff was damaged. In fact the defendant concedes it. The only question is how much.

"The evidence shows that the plaintiff and his family moved on the SE of SE of SW of Section 21, Twp. 139, Range 80, consisting of 10 acres, about 1915. Plaintiff erected substantial improvements on the premises, doing most of the work himself, he being a carpenter. The house is quite a large building, 33 by 43 on the outside. The plaintiff and his family first resided in the basement until the main part of the house was completed. The 10 acres are in a swale or meadow, and the house is in this valley. It is productive land. . . .

"The city purchased the 80 acres adjoining the plaintiff's land on the east, for a dump ground, and it is now being used as such. At present the refuse is being dumped in an old gravel pit, but that is already half full and will be filled in a year, and of course, other parts of the

80 will then be utilized. The place on the city grounds where refuse is now being dumped in the old pit is about 800 feet from the house, but the city dump grounds extend within 100 feet of the house. . . .

"There is considerable variance in the testimony as to the damages. . . .

"Three witnesses familiar with building and real estate values, besides the plaintiff, testified. They agree quite well on what the improvements would cost if replaced now. They all testified that it would cost at least $7,000.00 and possibly a little more, to replace them. They also agreed that there has been some depreciation by reason of wear and the decline in real estate values, and it seems quite clear that the property just before the establishment of the dump could not have been sold for what it has cost.

"The plaintiff testified that the fair market value before the establishment of the dump, was still $7,000.00; another witness placed it at $6,500.00; and two witnesses placed it at $4,000.00. From this evidence and my own observation, I think, considering the decline in real estate values, $4,750.00 would be a fair price prior to the establishment of the dump grounds.

"As to the value now there is also considerable variance. This variance may be due to the fact that some witnesses assumed the actual place of dumping would remain where it now is, while others took in consideration the fact that the dump ground extended right up to the plaintiff's premises. . . .

"Pursuant to stipulation, we have examined the premises many times under different conditions. When the wind is from the northeast, and when there is no wind at all, the stench and smell from the smoke is extremely obnoxious. Large quantities of offensive matter are hauled to it all day and part of the night. All the waste of the city, including offal, rubber, paper, rags, carcasses of animals, decayed and decomposed vegetable and animal matter mixed with the green grass from the lawns are burning twenty-four hours a day, and when the wind blows towards the house, or when there is no wind at all, and under certain atmospheric conditions, the smoke settles in the valley where these people live, making it almost uninhabitable.

The house, which is the principal part of the property, cannot be

moved, and if torn down the salvage will be very small. Plaintiff testified that he cannot remain on the property, and that it isn't worth anything now. Another witness placed the present value at $1,000.00; another from $2,000 to $2,500; another at $2,800.00. . . .

"Pursuant to stipulation I have viewed the premises, and in order to get a fair picture, have been near the property under various conditions from fifteen to twenty times. When the wind is from any direction except the northeast the premises are not affected, but when there is no wind, or the wind is from the northeast, there are times when this smoke is so thick around the buildings that they can be seen from only a short distance, and the odor is very offensive. Under those circumstances people can only live there if they are willing to endure such discomfort at least a few times a month."

The trial court concluded that the plaintiff had "been damaged in the sum of $3,500 in so far as the real property is concerned." As to damages, other than for injury to the real property, the court said: "The plaintiff also claims damages for personal discomfort since the establishment of the dump about a year and a half ago. The sum necessarily is not large, but at any rate he · suffered damages during that period. The rental value, in my opinion, declined at least $15 a month, and the court will therefore fix the damages at $250, making a total damage of $3,750, for which judgment may be entered."

The evidence fully sustains every statement made by the trial court in its decision. It shows that plaintiff's real property has been injured in such manner and to such extent as to, largely, if not wholly, destroy the value thereof for residential purposes. There was ample competent evidence from which the court could find, as it did, that as a direct result of the injury occasioned by the city dump, such property had depreciated in value in the sum of at least $3,500. We approve such finding of the trial court.

We are of the view, however, that plaintiff may not in addition to compensation for the damage to his real property also recover compensation for inconvenience, annoyance and discomfort, or for the depreciation of the rental value of such real property.

The defendant invaded and damaged, and in effect took a part of, plaintiff's property in January, 1939. Plaintiff's right to compensa-

tion arose when his property was so invaded and damaged or taken. 17 CJ pp. 880, 881; 46 CJ pp. 827, 828; 4 Sutherland, Damages, 4th ed. pp. 3877, 4149. If the injury or taking had been of a temporary character, plaintiff would not have been entitled to recover for permanent injury or taking, but his compensation would have been limited to the time during which the property was held or injured. 20 CJ p. 740. In this case the plaintiff elected to treat the injury to his real property as permanent. He asked for, and has been awarded, judgment for damages on the theory that the injury is permanent. The permanent injury for which plaintiff sought, and has been awarded, compensation, naturally would create the conditions which resulted in the inconvenience, annoyance and discomfort for which plaintiff sought to be compensated in the second action which he brought. The evidence showing the actual condition created by the dump and the inconvenience, annoyance and discomfort to which an occupant of the premises had been subjected, and probably will continue to be subjected, obviously had a direct bearing upon the nature and extent of the permanent injury to the property and the amount of depreciation in value resulting from such injury. 2 Lewis, Eminent Domain, 3d ed. pp. 1244, 1245.

The inconvenience, annoyance and discomfort to which an occupant of the premises will be subjected as a result of the pollution of the air, were among the principal factors tending to depreciate the value of the property; and the injury resulting to an occupant from such inconvenience, annoyance and discomfort would naturally be considered in fixing the damages for injury to the realty. So, also, the conditions which created the permanent injury with the resultant depreciation in value of the premises necessarily would affect and depreciate the rental or usable value of the property; and the depreciation in rental or usable value would necessarily be considered in fixing the depreciation in market value. Hence, if plaintiff is compensated for permanent injuries,— for the depreciation in value of the real property,—he may not in addition thereto receive compensation for certain results that followed from the permanent injury for which he has been compensated. Texas & P. R. Co. v. Ford, 54 Tex Civ App 312, 117 SW 201; see also Southern R. Co. v. Routh, 161 Ky 196, 170 SW 520. Plaintiff however

was entitled to receive full compensation for the injury to his real property. Under the Constitution he was entitled to be paid such compensation before the property was taken or damaged. ND Const. §14. And, where, as here, property is taken or damaged for a public use without just compensation having been first made, payment is legally due to the owner as of the date of the taking or damaging of the property, and hence interest should be given from the time when the property is taken or damaged. 4 Sutherland, Damages, 4th ed. p. 4149; 18 Am Jur 912 et seq., Eminent Domain; Seaboard Air Line R. Co. v. United States, 261 US 299, 67 L ed 644, 43 S Ct 354; Jacobs v. United States, 290 US 13, 78 L ed 142, 54 S Ct 26, 96 ALR 1.

"The concept of just compensation is comprehensive and includes all elements, 'and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation.' The owner is not limited to the value of the property at the time of the taking; 'he is entitled to such addition as will produce the full equivalent to that value paid contemporaneously with the taking.' Interest at a proper rate 'is a good measure by which to ascertain the amount so to be added.'" Jacobs v. United States, supra. See Comp. Laws 1913, §6070.

In this case, the judgment made no allowance for interest. The plaintiff is entitled to be compensated in full. In order to be compensated in the amount to which he is entitled under the Constitution, plaintiff is entitled to interest upon the amount of damage sustained by him on account of the injury to his land from the date the land was invaded by the defendant.

The district court is directed to enter an order setting aside the judgment for $250, and dismissing the action in which it was rendered. The District Court is further directed to enter an order vacating the judgment for $3,500, and to order the entry of a new judgment in favor of the plaintiff and against the defendant, City of Bismarck, for $3,500, with interest thereon at four per cent per annum from January 15, 1939, to the date of entry of such new judgment.

BURR, Ch. J., and MORRIS, BURKE and NUESSLE, JJ., concur.

(On petition for rehearing.)

CHRISTIANSON, J.  Defendant has petitioned for a rehearing "on the ground and for the reason that the court has overlooked material law and facts in the above entitled action, namely:

1st. That this is an action for damages in tort and not an action in condemnation proceedings.

2nd. That interest is not allowed as a matter of law under our statute in cases of this kind.

3rd. That there was neither pleading nor proof, nor claim by the plaintiff for interest.

4th. That even if interest should be allowed, it is excessive under chapter 150, Laws 1937."

The contentions thus advanced will be considered in the order stated.

(1) In support of the first contention it is said in the petition for rehearing:

"The court overlooked the fact that this action is not one in eminent domain, . . . and the damages are not measured the same as in an action in eminent domain. The city is not bringing this action to appropriate land. The city is not a party plaintiff. Nor is the city in any manner seeking the aid of the court to procure for itself any of the plaintiff's land. The action is brought by plaintiff, Donaldson, against the city for damages and is a tort action, . . . and it would follow that the right to interest in this case is the same as it would be if a private party had, for instance, built a slaughterhouse in the neighborhood of plaintiff's land. It is simply resulting damages as distinguished from actual taking of the property. . . . .

"The plaintiff, if he relied on his rights under the 5th Amendment of the Federal Constitution, could have enjoined the defendant from operating the dump ground, and if the defendant in that case should wish to proceed, the city could then bring an action in condemnation proceedings, and in that case the plaintiff, Donaldson, as defendant in that case, could have asserted his rights under the doctrine of eminent domain. The plaintiff has not brought himself in a position to rely upon the 5th Amendment of the Federal Constitution in this, that he has brought an action against the city for damages. Under the common law, this would be an action for damages, quare clausum fregit."

The original decision in this case demonstrates, we think, beyond all doubt that this court was under no misapprehension as to the nature of the action. There is not a suggestion in that decision that the action is one by the city for ·condemnation. The first two sentences in the decision read:

"The plaintiff brought two actions against the defendant for damages alleged to have been sustained by reason of the establishment, maintenance and operation by the defendant of·a public.dump near the home owned and occupied by the plaintiff. In one action damages are sought for permanent injuries to the real property, and in the other action damages are sought for the annoyance, inconvenience and discomfort caused the plaintiff as a result of the establishment, maintenance and operation of said public dump."

The plaintiff did not claim, and the decision did not purport to grant. him, any relief under the Fifth Amendment to the Federal Constitution, and, of course, that amendment could in no circumstances have any application to any question involved in this action. 16 CJS pp. 129 et seq.; 12 CJ p. 744; 1 Cooley, Constitutional Limitations, 8th ed. p. 66, and authorities cited in note 3; Brown v. New Jersey, 175 US 172, 44 L ed 119, 20 S Ct 77; Capital City Dairy Co. v. Ohio, 183 US 238, 46 L ed 171, 245, 246, 22 S Ct 111; Corrigan v. Buckley, 271 US 323, 70 L ed 969, 46 S Ct 521.

"The first ten amendments to the Federal Constitution commonly known as the 'bill of rights,' guaranteeing protection to certain rights of the people, do not apply to the states, but constitute limitations on the power of the Federal Government only." 16 CJS p. 129.

The Supreme Court of the United States has said "it is elementary" that the Fifth Amendment to the Constitution of the United States "operates solely on the National Government, and not on the states." Capital City Dairy Co. v. Ohio, 183 US 238, 245, 46 L ed 171, 175, 22 S Ct 120. And that "the Fifth Amendment 'is a limitation only upon the powers of the general government, . . . and is not directed against the action of individuals.'" Corrigan v. Buckley, 271 US 323, 330, 70 L ed 969, 972, 46 S Ct 521; 16 CJS pp. 129, 130.

But the facts pleaded and proven in this case clearly establish that rights guaranteed to the plaintiff by § 14, article 1, of the Constitution

of North Dakota, have been violated to plaintiff's damage. That section provides: "Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner." This guaranty is broader than the guaranty of the Fifth Amendment to the Constitution of the United States. King v. Stark County, 67 ND 261, 264, 271 NW 771. Under § 14, supra, the owner is as much protected against his property being damaged as against his property being taken; and damaging property constitutes as much a ground for recovery as does the taking of property. King v. Stark County, 67 ND at p. 266, 271 NW at p. 774.

The guaranty of § 14 of the Constitution safeguards rights, and its protective power is not dependent upon the employment of any particular remedy. It is embodied in and made a part of the "Declaration of Rights" in the State Constitution, which is a counterpart of the Bill of Rights in the Federal Constitution.

"Section 14 of the Constitution was intended to guarantee to an owner of property the full right of ownership including possession and enjoyment rather than a right to redress for wrong committed in taking his property away from him. The constitutional mandate is not satisfied by the ascertainment of the amount of compensation and making the same a charge upon a state or municipal fund for which the credit of the state or the municipality is pledged. Martin v. Tyler (4 ND 278, 60 NW 392, 25 LRA 838). The Constitution guarantees to the owner something more than a right to recover judgment for the damages caused by the taking of his property or a recovery of the property itself after it has been taken; it guarantees that his property shall not be taken or damaged even for a necessary public use 'without just compensation in money being first made to, or paid into court, for the owner.' Martin v. Tyler, supra. See also 20 CJ pp. 835–839.

"Section 14 of the Constitution was 'calculated to protect property owners from injustice and wrong on the part of municipal or other corporations or individuals invested with the privilege of taking private property for public use, and should be given a liberal construction by the courts in order to make it effectual in the protection of the rights of the citizen.' Donovan v. Allert, 11 ND 289, 91 NW 441, 58 LRA 775, 95 Am St Rep 720; 1 Lewis, Eminent Domain, 2d ed.

§§ 366, 389. And 'the taking or damaging of private property for public use without the owner's consent is deemed so serious that payment therefor is a prerequisite to attempting to do so.' This is so even though the ultimate right to take the property for the proposed public use is manifest. 'This does not mean that it (the property) may first be appropriated, and paid for at the end of a suit for damages, but means that payment must precede the taking or damaging.' Donovan v. Allert, 11 ND 289, 298, 91 NW 441, 58 LRA 775, 95 Am St Rep 720; 20 CJ pp. 835, 836, 838, 839." Becker County Sand & Gravel Co. v. Wosick, 62 ND 740, 749, 750, 245 NW 454.

The evidence in this case shows and the trial court found—(and we have approved these findings)—that plaintiff's property, immediately prior to the establishment of the dump, had a market value of $4,750; and that by reason of, and as a result of, the establishment of such dump and the defendant's use and maintenance thereof, plaintiff's property was damaged so as to depreciate the market value thereof from $4,750 to $1,250. In short, the acts of the defendant resulted in taking away from or depriving plaintiff of more than two thirds of the value of his property.

The provisions of § 14 of the Constitution are not restricted to eminent domain proceedings. They are applicable as well where private property has been taken or damaged without the consent of the owner, and where no condemnation proceeding has been brought. It is well settled that in such case the constitutional guaranty may be invoked, and the owner may maintain an action to recover just compensation for the property taken or the damage inflicted. Notes:—20 ALR pp. 516 et seq. and 28 LRA(NS) pp. 968 et seq.; 18 Am Jur p. 1028, Eminent Domain; 2 Lewis, Eminent Domain, 3d ed. pp. 1545–1548. That rule has been recognized and applied by this court in many cases. Gram Constr. Co. v. Minneapolis, St. P. & S. Ste. M. R. Co. 36 ND 164, 161 NW 732; Schilling v. Carl Twp. 60 ND 480, 235 NW 216; Mayer v. Studer & M. Co. 66 ND 190, 262 NW 925; King v. Stark County 67 ND 260, 271 NW 771; Jacobson v. State, 68 ND 259, 278 NW 652.

In Mayer v. Studer & M. Co. this court said: "Where the state or an agency thereof acting in a sovereign capacity takes or damages pri-

vate property for public use without legal exercise of the power of eminent domain, the aggrieved party may recover compensation for the property thus taken or compensation for the damage to his property thus inflicted."

(2). It is next contended, "that interest is not allowed as a matter of law under our statutes in cases of this kind," and attention is called to our statutory provisions (Comp. Laws 1913, §§ 7142, 7143) relating to interest, and to the decision in Seckerson v. Sinclair, 24 ND 625, 140 NW 239, wherein it was held that the allowance of interest in an action for tort is discretionary with the jury. The statutory provisions cited by the defendant, and construed in Seckerson v. Sinclair, supra, have no application to a case like this, wherein the right to recover "just compensation" is guaranteed by § 14 of the Constitution. In such cases the owner of property that has been damaged or taken is entitled to "just compensation," and to have such compensation paid to him, or into court, before the damage is inflicted or the property taken. Obviously, the value of property that has been taken or the amount of damage that has been inflicted, would not be less in a case where the property is taken or the damage is inflicted without the consent of the owner, and without the legal exercise of the power of eminent domain, than it would be if the compensation had been determined in a condemnation proceeding at, or immediately prior to, the time the damage was inflicted or the property taken.

Under the mandate of the Constitution, the owner is entitled to be paid "just compensation" before his property is taken or damaged. Where the property is taken or damaged without the owner's consent and without the legal exercise of the power of eminent domain, the owner becomes entitled to just compensation for the value of the property that has been taken or the amount of damage that has been inflicted the instant the property is taken or damaged. In such case, payment at some future time of the value of the property at the time it was taken, or the amount of the damage determined as of the time it was inflicted, does not constitute the just compensation which the Constitution requires to be paid to the owner. Just compensation, in such case, should include in addition to the value of the property at the time of the taking, or the amount of the damage at the time of its infliction,

such additional amount as may be required to pay the full equivalent of the value or of the damage, as the case may be, paid contemporaneously with the taking or the damaging. Ordinarily, "interest at a proper rate is a good measure by which to ascertain the amount so to be added." Seaboard Air Line R. Co. v. United States, 261 US 299, 67 L ed 664, 43 S Ct 357; Jacobs v. United States, 290 US 13, 78 L ed 142, 54 S Ct 26, 96 ALR 1; United States v. Creek Nation, 295 US 103, 79 L ed 1331, 55 S Ct 681; Shoshone Tribe v. United States, 299 US 476, 81 L ed 360, 57 S Ct 244; United States v. Klamath & M. Tribes, 304 US 119, 82 L ed 1219, 58 S Ct 799; Metropolitan Water Dist. v. Adams, 16 Cal(2d) p. 676, 107 P(2d) p. 618; note, 96 ALR pp. 150 et seq.; 29 CJS pp. 1053 et seq.; 18 Am Jur p. 912; Eminent Domain; Warren v. First Div. St. Paul & P. R. Co. 21 Minn 424, 427; see also Oklahoma City v. Wells, 185 Okla 369, 91 P(2d) 1077, 123 ALR 662; 2 Lewis, Eminent Domain, 3d ed. pp. 1319–1321.

In Jacobs v. United States, 290 US 13, 78 L ed 142, 54 S Ct 26, 96 ALR 1, supra, suit was brought by the owners of land to recover for damage caused by intermittent flooding as the consequence of the construction of a dam. The trial court held that the owners "were entitled to the amount of damage caused by the construction of the dam as of the date of its completion (October 1, 1925), 'together with interest thereon at 6 per cent from the date of said taking until now as just compensation under the Fifth Amendment to the Constitution of the United States.'" The circuit court of appeals held that the plaintiffs were not entitled to the allowance that had been made by the district court based upon a computation of interest at the rate of 6 per cent from the date of the taking. The Supreme Court of the United States reversed the decision of the circuit court of appeals. In its decision, the Supreme Court of the United States said:

"The circuit court of appeals, distinguishing the present suits from condemnation proceedings instituted by the Government, held that the suits were founded upon an implied contract and hence that interest could not be allowed, citing United States v. North American Transp. & Trading Co. 253 US 330, 64 L ed 935, 40 S Ct 518.

"This ruling cannot be sustained. The suits were based on the right to recover just compensation for property taken by the United States

for public use in the exercise of its power of eminent domain. That right was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty to pay imposed by the Amendment. . . .

"The amount recoverable was just compensation, not inadequate compensation. The concept of just compensation is comprehensive and includes all elements, 'and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation.' The owner is not limited to the value of the property at the time of the taking; 'he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking.' Interest at a proper rate 'is a good measure by which to ascertain the amount so to be added.' "

In United States v. Creek Nation, 295 US 103, 79 L ed 1331, 55 S Ct 681, supra, the Supreme Court of the United States held that the just compensation to be awarded for the appropriation of lands by the United States "should not be confined to the value of the lands at the time of the taking but should include such addition thereto as may be required to produce the present full equivalent of that value paid contemporaneously with the taking;" and that "interest at a reasonable rate is a suitable measure by which to ascertain the amount to be added."

The statutes of this state declare: "Interest is the compensation allowed for the use, or forbearance, or detention of money, or its equivalent." Comp. Laws 1913, § 6070.

In this case plaintiff's property was damaged in January, 1939. Judgments were rendered in his favor on July 19, 1940. The defendant appealed, and the action is still pending. Comp. Laws 1913, § 7966. The plaintiff has not been paid one cent of the "just compensation" which the Constitution required the defendant to pay before taking or damaging plaintiff's property. Payment now of the amount defendant was required to pay in January, 1939, will not constitute

such "just compensation" as the Constitution prescribes. There must be added thereto an amount sufficient to produce the full equivalent of the amount of the damage inflicted upon plaintiff's property, paid contemporaneously with the infliction of the damage. Shoshone Tribe v. United States, 299 US 476, 496, 497, 81 L ed 360, 368, 369, 57 S Ct 244. And interest at the rate prescribed by our laws as the legal rate, in absence of contract (Laws 1935, chapter 157), is, we think, "a proper measure by which to ascertain the amount so to be added." Jacobs v. United States, 290 US 13, 78 L ed 142, 54 S Ct 26, 96 ALR 1; United States v. Creek Nation, 295 US 103, 79 L ed 1331, 55 S Ct 681; Shoshone Tribe v. United States, 299 US 476, 81 L ed 360, 57 S Ct 244, and United States v. Klamath & M. Tribes, 304 US 119, 82 L ed 1219, 58 S Ct 799, supra.

(3). The next contention is "that there was neither pleading, nor proof, nor claim by the plaintiff for interest," and that hence there is no basis for allowance of interest.

This contention overlooks the foundation of plaintiff's cause of action. Such cause of action rests upon a constitutional guaranty which entitles plaintiff to recover "just compensation" for the damage inflicted upon his property. In his complaint the plaintiff alleged that prior to the establishment of the dump his property was of the value of $10,000, and that the establishment, maintenance and operation of the dump in the manner and with the results set forth in the complaint had rendered plaintiff's property worthless. Judgment was demanded in the sum of $10,000. "The requirement that 'just compensation' shall be paid is comprehensive, and includes all elements, and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation." Seaboard Air Line R. Co. v. United States, 261 US at p. 306, 67 L ed at p. 670, 43 S Ct 354. As has been pointed out, where property is taken or damaged before ascertainment and payment of compensation for the taking or damaging, the owner is not limited to the value of the property or the amount of the damage at the time of the taking or the damaging; but "he is entitled to such addition as will produce the full equivalent" of that value or damage paid contemporaneously with the taking or the infliction of the injury, and interest at a proper rate may ordinarily be used as a proper

measure by which to ascertain the amount so to be added. Seaboard Air Line R. Co. v. United States, 261 US 299, 67 L ed 664, 43 S Ct 357, supra. The plaintiff's complaint showed that his property had been damaged without the ascertainment or payment of compensation, and it alleged the amount of such injury and the acts which occasioned it. He was not required to enumerate in his prayer for judgment the elements of the "just compensation" which he was entitled to be awarded for the damage that had been inflicted upon his property or to designate the measure to be adopted in the determination or computation of such compensation. A demand for interest would have been superfluous. Oklahoma City v. Wells, 185 Okla 369, 91 P(2d) 1077, 123 ALR 662, supra. The complaint in this case asked for judgment for the damage to the property—a damage for which the Constitution said the plaintiff was entitled to receive, and the defendant city was under obligation to make, "just compensation." The judgment which the district court is directed to enter under the decision in this case is for such "just compensation" and for no more. Such judgment merely awards to the plaintiff the amount of damage inflicted upon the plaintiff in January, 1939, and such addition thereto "as will produce the full equivalent" of the amount of such damage paid contemporaneously with the infliction of the injury. Seaboard Air Line R. Co. v. United States, 261 US 299, 67 L ed 664, 43 S Ct 357; Jacobs v. United States, 290 US 13, 78 L ed 142, 54 S Ct 26, 96 ALR 1; United States v. Creek Nation, 295 US 103, 79 L ed 1331, 55 S Ct 681; Shoshone Tribe v. United States, 299 US 476, 81 L ed 360, 57 S Ct 244 and United States v. Klamath & M. Tribes, 304 US 119, 82 L ed 1219, 58 S Ct 799, supra.

(4). It is next contended "that even if interest should be allowed, it is excessive under chapter 150, Laws of 1937."

The laws of this state provide that, "interest for any legal indebtedness shall be at the rate of four per cent per annum, unless a different rate, not to exceed the maximum rate allowed by law, is contracted for in writing" (Laws 1935, chap. 157); and that, "interest is payable on judgments recovered in the courts of this state at the rate of 2% per annum, and no greater rate, and such interest must not be compounded in any manner or form." (Laws 1937, chap. 150.)

It seems to be the contention of the defendant that inasmuch as judgment was rendered in favor of the plaintiff on July 19, 1940, that interest from that date cannot be allowed at a rate in excess of 2 per cent per annum. The contention is not tenable. Defendant appealed under § 7846, Comp. Laws 1913, as amended, and demanded a trial anew of the entire case in this court. Said § 7846 provides that in such case "the Supreme Court shall try anew the question of fact . . . in the entire case . . . and shall . . . · either affirm or modify the judgment or direct a new judgment to be entered in the district court." It therefore became incumbent upon this court to "review the record here presented, and find the facts for itself" (Doyle v. Doyle, 52 ND 380, 202 NW 860), to "apply what we deem to be the law to the facts as disclosed by the record" (Buckingham v. Flummerfelt, 15 ND 112, 106 NW 563), and "to enter such judgment as is appropriate upon the whole record." Hoellinger v. Hoellinger, 38 ND 636, 166 NW 519. After reviewing the whole record, this court reached the conclusion that in order that the plaintiff may have "just compensation" for the damage the defendant had inflicted upon his property in January, 1939, he should be paid $3,500, the amount of the damage inflicted in January, 1939, and in addition thereto interest upon that sum at the rate of 4 per cent per annum from the time the damage was inflicted, and thus receive compensation equivalent to the amount of the damage to his property if the same had been paid contemporaneously with the infliction of such damage. In order to give effect to the conclusion thus reached, this court directed the district court to vacate its former judgment, and to order the entry of a new judgment in an amount which this court, upon the review and trial anew of the entire case as prescribed by the statute, had determined to be a proper judgment,—a judgment which will award to the plaintiff "just compensation" for the damage that had been inflicted upon his property.

We adhere to the former decision. A rehearing is denied.

BURR, Ch. J., and MORRIS, BURKE, and NUESSLE, JJ., concur.