In the Matter of Alf J. BO.

In the Matter of the Administration by Ramsey National Bank & Trust Company and Lawrence Lange, Co-Trustees of the Trust Created by Alf J. Bo.

In the Matter of the Conservatorship of Alf J. Bo, an Incapacitated Person.

Civ. Nos. 10665, 10734.

Supreme Court of North Dakota.

April 1, 1985.

As Amended April 18, 1985.

Gary R. Thune [argued], of McConn, Fisher & Thune, Ltd., Grand Forks, for appellant First Nat. Bank in Grand Forks, conservator of Alf J. Bo.

Melvin Christianson. [argued], of Foughty, Christianson & White Eagle, Devils Lake, for appellees, co-trustees Ramsey Nat. Bank and Lawrence J. Lange.

J. Thomas Traynor [argued], of Traynor, Rutten & Traynor, Devils Lake, for appellee, Lake Region Community College.

Allen Hoberg [argued], Asst. Atty. Gen., Bismarck, for appellee Attorney General.

Lewis C. Jorgenson, Ramsey County State's Atty., Devils Lake, for appellee and cross-appellant Ramsey County.

GIERKE, Justice.

First National Bank in Grand Forks, Conservator of Alf J. Bo, appeals from an amended judgment of the District Court of Ramsey County and from an order of the Ramsey County Court. The appeals were consolidated by stipulation of the parties. The district court refused to give effect to two attempted revocations of the trust set up by Alf J. Bo [Bo]: (1) The notice of revocation executed by Bo on December 11, 1981; and (2) the notice of revocation executed by the conservator at Bo's request on August 26, 1983. The order of the Ramsey County Court from which the conservator appeals amended the conservator's powers over the trust to exclude the authority to revoke Bo's trust. We conclude that the county court did not err in limiting the conservator's authority over Bo's trust. Further, we affirm the district court's amended judgment which denied revocation of Bo's trust.

Appellees in this case include: (1) the Co-Trustees of the trust created by Alf J. Bo, i.e., Ramsey National Bank & Trust Company, and Lawrence J. Lange; (2) Lake Region Community College; (3) the Ramsey County State's Attorney; and (4) the Attorney General of the State of North Dakota. Appellee and cross-appellant, the Ramsey County State's Attorney, asserts on cross appeal that the district court erred

in failing to grant a continuance to the State's Attorney for the October 31, 1983, hearing held on the petition for trust revocation.

At age 65, Alf J. Bo, a Ramsey County farmer, married Dolly Lamoreaux [Dolly], then age 60, the owner of a ranching operation in Benson County. They lived on Bo's farm near Devils Lake. Dolly died in November of 1979.

On April 18, 1979, Bo executed a trust agreement in which he disposed of half of his trust estate to the Devils Lake Area Foundation and half to Lake Region Junior College (or Lake Region Community College). Bo named as co-trustees Ramsey National Bank & Trust Company of Devils Lake and Lawrence J. Lange. He also reserved the right to revoke the trust.

In December of 1979, Bo executed a will in which he devised and bequeathed the residue of his estate to Lake Region Junior College.

On September 24, 1980, Elaine "Jackie" Larsen [Elaine], one of Dolly's nieces, came to North Dakota from Washington state to visit Bo. A short time later, on September 30, Elaine petitioned the Ramsey County Court to appoint her the conservator of Bo, asserting that Bo's advanced age of 82 years rendered him unable to effectively manage his property and affairs. Her appointment was secured by order of the Ramsey County Court on that same date. On October 4, 1980, Bo executed another will devising his sole estate to Elaine and then left for the State of Washington with her.

Thereafter, proceedings were instituted in the Ramsey County Court for the removal of Elaine as conservator. A hearing was held on December 3, 1980, at which time Roger Stoe and Elaine were appointed co-conservators, and Roger was also appointed temporary guardian for Bo. In the meantime, on October 7, 1980, the trustees had petitioned the District Court of Ramsey County for supervision of the trust and the court accepted supervision on November 5, 1980.

In December of 1980, Elaine secured appointment as Bo's guardian in the State of Washington. In early 1981, Elaine resigned as Bo's conservator in Ramsey County, North Dakota, and First National Bank in Grand Forks was appointed conservator on February 18, 1981.

The conservator [First National Bank] petitioned the county court for additional authority over Bo's trust. On July 8, 1981, the court issued an order granting additional powers to the conservator, which order reads in pertinent part:

"The Conservator, First National Bank in Grand Forks, be and it hereby is granted as additional powers to those conferred upon it by Sections 30.1–29–24 and 30.1–29–25, *all those powers over the estate and affairs of Alf Bo which Alf Bo could exercise if present and not under disability, except the power to make a will.* This enlargement of powers of the Conservator is granted pursuant to the provisions of Section 30.1–29–26 (5–426) and subsection 3 of Section 30.1–29–08 (5–408) of the North Dakota Century Code." [Emphasis added.]

On December 10, 1981, one year after Elaine was appointed Bo's guardian, a Washington court discharged her as guardian, relying on an affidavit prepared by Washington Dr. Richard V. Lance which stated that Bo was no longer incapable of understanding the nature and extent of his business affairs. The next day, Bo executed a document which revoked the trust which he had set up in 1979. Later, Bo, age 85, formally adopted Elaine, age 53. Approximately two years later, the conservator executed a notice of revocation of the trust, pursuant to a written request from Bo dated July 15, 1983.

The conservator petitioned the district court for revocation of the trust. The court initially granted the petition for revocation but stayed its order pending a determination of the conservator's authority in county court.

The county court, when petitioned by the trustees and Lake Region Community College, determined that the additional powers granted to the conservator on July 8, 1981, did not include the power to revoke the

existing trust. Further, the county court determined that Bo remained an incapacitated person. Thus, the district court amended its judgment to reflect the county court's determination. The district court, in its amended judgment, refused to give effect to either the notice of revocation executed by Bo on December 11, 1981, or the notice of revocation executed by the conservator on August 26, 1983. This appeal followed.

Initially, we must discuss Lake Region's assertion that this court is without jurisdiction to hear the appeal from the county court because it was not filed within the appropriate time.

Lake Region contends that an appeal from a conservatorship decision in county court shall be filed sixty days from the date of the order appealed from, pursuant to Rule 4(a) of the North Dakota Rules of Appellate Procedure and § 30.1–02–06.1 [U.P.C. 1–308], N.D.C.C. The conservator in the instant case executed his notice of appeal on June 25, 1984, which is more than sixty days from the order of the county court dated March 28, 1984.

Rule 4(a), however, provides that the notice of appeal in a civil case shall be filed "within sixty days of the *date of the service of notice of entry of the judgment or order appealed from*" [emphasis added]. No notice of entry of the order has been served in this case. Therefore, the time for appeal technically has not yet commenced to run.

■ The conservator has filed a timely notice of appeal with respect to the revocation of the *trust* matter pursuant to § 59–04–25, N.D.C.C. This appeal, along with the appeal from the county court, relates to a central issue, *i.e.*, whether or not the trust has been properly revoked. The parties, Lake Region included, stipulated to a consolidation of the appeals because the central issue is inextricably entwined within the conservatorship proceeding and the trust proceeding. Where two actions are consolidated by stipulation of the parties, the court's power and jurisdiction is the same as if only one action had been brought. *Donaldson v. City of Bis-*

*marck*, 71 N.D. 592, 3 N.W.2d 808, 813 (1942); 1 Am.Jur.2d *Actions* § 161. Thus, Lake Region's contention that this court lacks jurisdiction to hear the appeal from the county court is without merit.

The issue for this court on appeal is the effectiveness of the two attempted revocations, one executed by Bo himself in 1981 and another executed by his conservator in 1983.

I.

## REVOCATION BY BO ON DECEMBER 11, 1981

■ In order to determine the effectiveness of Bo's revocation, we must examine the county court's assessment of Bo's competency. A trial court's findings concerning competency are questions of fact which will not be overturned on appeal unless they are clearly erroneous. Rule 52(a), North Dakota Rules of Civil Procedure; *Mitchell v. Preusse*, 358 N.W.2d 511, 513 (N.D.1984); *Nygaard v. Robinson*, 341 N.W.2d 349, 354 (N.D.1983).

The conservator argues that the county court erroneously presumed Bo was incompetent because he was under a conservatorship. As the conservator points out, the existence of a conservatorship, in and of itself, has no effect on the capacity of that person. Section 30.1–29–08(2)(e) [U.P.C. 5–408], of the North Dakota Century Code, so provides:

"2. The court has the following powers which may be exercised directly or through a conservator in respect to the estate and affairs of protected persons:

.    .    .    .    .

"e. An order made pursuant to this section determining that a basis for appointment of a conservator or other protective order exists has no effect on the capacity of the protected person."

The appointment of a conservator or other protective order is made for a person who is under disability and, as such, is unable to maintain his property. Section 30.1–29–01(2) [U.P.C. 5–401], N.D.C.C., sets forth

the circumstances under which a conservator may be appointed:

"2. Appointment of a conservator or other protective order may be made in relation to the estate and affairs of a person if the court determines that:

"a. The person is unable to manage his property and affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.

"b. The person has property which will be wasted or dissipated unless proper management is provided, or that funds are needed for the support, care, and welfare of the person or those entitled to be supported by him and that protection is necessary or desirable to obtain or provide funds."

While a conservator is appointed to manage the property of a person under disability, a guardian is appointed for a person who is found to be "incapacitated" and unable to attend to affairs concerning his person. An "incapacitated person" is defined in subsection 1 of § 30.1–26–01 [U.P.C. 5–101], N.D.C.C.:

"1. 'Incapacitated person' means any person who is impaired by reason of mental illness, mental deficiency, physical illness or disability, advanced age, chronic use of drugs, chronic intoxication, or other cause (except minority) to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person."

Although the definitions of "disability" and "incapacitated person" appear quite similar, the Comments to § 30.1–28–04 [U.P.C. 5–304], N.D.C.C., point out the different meanings of "incapacity", which warrants a guardianship, and "disability", which warrants a conservatorship.

The instant case not only involves a conservatorship over Bo, but on two occasions guardians were appointed. A temporary guardianship was established over Bo by the Ramsey County Court in early December of 1980. In addition, a court in the State of Washington appointed Elaine as Bo's guardian that same month, after Elaine and Bo traveled to Washington.

■ The county court did not specifically address Bo's competence to revoke his trust. Rather, it found him to be "incapacitated". We will not automatically assume that a finding of incapacity is equivalent to incompetency, however. Beginning with the proceedings in September of 1980, the county court determined that Bo was incapacitated and granted a conservatorship. The court continued to refer to Bo as an incapacitated person in the proceedings which ensued through 1983. The court issued findings and conclusions pursuant to a petition for review of the district court's decision on Bo's trust matter. Those findings and conclusions are set forth, in pertinent part:

### "FINDINGS OF FACT

. . . . .

"2. That Alf Bo continues to be a person who is unable to manage his property and affairs effectively for reasons of advanced age, congestive heart failure, and alcoholism;

"3. The Mr. Alf Bo has property which will be wasted or dissipated unless proper management is provided;

"4. That Mr. Alf Bo continues to need funds for his support, care, and welfare and that the protection and preservation of any property is necessary to obtain or provide such funds;

. . . . .

"8. That on or about August 26, 1983, in behalf of Alf Bo, an incapacitated person, a Notice of Revocation of Trust Agreement was filed in the Ramsey County District Court by the conservator, First National Bank, Grand Forks, North Dakota;"

"CONCLUSIONS OF LAW

"1. That Mr. Alf Bo continues to be an incapacitated person pursuant to *Section 30.1–26–01, N.D.C.C.,* who is impaired by reason of advanced age, congestive heart disease and chronic intoxication to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his estate;

"2. That Mr. Alf Bo has property which will be wasted or dissipated unless proper management is provided and funds continue to be needed for his support, care, and welfare and that the protection of assets is necessary and desirable to obtain and provide said funds;"

█ The district court concluded that the county court's findings set forth above "go far beyond a simple finding that Alf Bo is a person under disability, and in fact are findings of incompetency". We agree.

Although the county court's findings refer to Bo as "incapacitated", we can infer from the findings that he was deemed incompetent to revoke his trust.

The Comments to North Dakota's Uniform Probate Code, Article V, entitled "Protection of Persons under Disability and Their Property", make it clear that mental incompetence may be the underlying basis for the appointment of a conservator. The record raises substantial doubt as to Bo's competency. The county court examined Bo in September of 1980 when a short hearing was held on Elaine's petition for appointment as Bo's conservator. The transcript of the hearing indicates that Bo was extremely confused at the time. Bo was examined on one other occasion at a hearing held at the request of the newly appointed conservator, First National Bank in Grand Forks. At that time, in May of 1981, Bo was first questioned by the court in chambers to determine his general physical and mental condition and whether or not he wished to remain in Washington with Elaine. The transcript of Bo's comments in chambers, as well as his testimony, casts uncertainty on his competency.

The fact that Bo adopted Elaine, a 53-year-old woman, shortly after a Washington court terminated his guardianship further strengthens our confidence in the county court's assessment of Bo's competency.

█ The conservator asserts that the only evidence of Bo's competency to revoke his trust on December 11, 1981, is an adjudication from the State of Washington which restored Bo to competency on December 10, 1981. However, the Washington adjudication is not binding on the issue of Bo's competency in the Ramsey County Court proceeding. *See Sturdevant v. SAE Warehouse, Inc.,* 270 N.W.2d 794, 798–799 (N.D.1978); and *Stetson v. Investors Oil, Inc.,* 176 N.W.2d 643, 651–652 (N.D.1970). What is binding, however, is the Ramsey County Court's finding on this issue.

We hold that the county court's findings concerning Bo's competency to revoke his trust are not clearly erroneous.

II.

REVOCATION BY THE
CONSERVATOR ON
AUGUST 26, 1983

█ We must initially address the Ramsey County State's Attorney's argument on cross appeal. The State's Attorney asserts that the district court erred in failing to grant a continuance of the case. Generally a trial court's failure to grant a motion for continuance will not be overturned on appeal unless the court abused its discretion. *Moll v. Moll,* 231 N.W.2d 769, 771 (N.D.1975). Therefore, we will not overturn the district court's decision in the absence of an abuse of discretion. There has been no such showing in the instant case. The district court's denial of the Ramsey County state's attorney's request for a continuance is not in error.

We now address the conservator's contention that the district court erred in referring the matter to the county court for review of its decision. The district court, in its judgment dated January 23, 1984, ordered that:

"[T]he execution of said Order is hereby in all things stayed until January 31,

1984, and, in the event a petition may be filed in Ramsey County Court to determine the conservator's authority or to obtain the County Court's approval of the proposed revocation pursuant to Section 30.1–29–08(2)(d), NDCC, until such further reasonable time as may be required for determination of the matter in County Court, but not, in any event, beyond March 31, 1984."

Conservator's first argument is that the district court should not have limited the review of its decision to Ramsey County Court because Judge Dosch's involvement in the case presented a conflict of interest. The conflict arises, according to the conservator, because Bo's trust assets are left to two community interests, *i.e.*, the Devils Lake Area Foundation and the Lake Region Community College. The conservator argues that Judge Douglas B. Heen disqualified himself because his ruling on the trust disposition might have benefited the Devils Lake community, and that the conflict exists for Judge Dosch as well. Conservator's argument is without merit.

The conservator next argues that there is no statutory authority for review of the district court's decision by the county court. We hold that it was appropriate for the district court to refer its decision to the county court for a determination of whether or not the conservator had the power to revoke the trust. The district court concluded that the additional powers granted to the conservator may not have included the power to revoke Bo's trust. Every court has the authority to stay its proceedings to insure that justice is accomplished. 1 Am.Jur.2d *Actions* § 93. *See Burdick v. Mann*, 60 N.D. 710, 236 N.W. 340, 345 (1931). Because the district court does not have jurisdiction over conservatorships, it properly stayed its order pending a resolution of this issue in county court.

Conservator contends that the county court had no jurisdiction over trust matters until July of 1983 and thus, in 1981, it could not have granted the conservator the power to revoke his trust. Our concern is that the county court has jurisdiction over the conservatorship, not necessarily over the trust, in order to enlarge the conservator's power. Section 30.1–02–02 [U.P.C. 1–302], N.D.C.C., provides a county court with jurisdiction over conservatorships.

The final issue for our consideration is whether or not the county court erred in determining that the conservator lacked the authority to revoke Bo's trust. As stated previously, the county court is provided with statutory authority over conservatorships. § 30.1–02–02, N.D.C.C. Chapter 30.1–29, N.D.C.C., provides that the county court determines the need for a conservator and also delineates the powers which the county court may exercise over the estate and affairs of a person protected by a conservator. The powers may be exercised directly or through the conservator.

Upon motion of the conservator, the court initially enlarged the powers of the conservator to include all powers exercisable by Bo over his estate and affairs which he could exercise if present and not under disability, except the power to make a will. This additional grant of authority is statutorily authorized through §§ 30.1–29–26 [U.P.C. 5–426] and 30.1–29–08 [U.P.C. 5–408], N.D.C.C.

The conservator interpreted this grant of authority to include the power to revoke Bo's trust. The county court disagreed. Therefore, the county court amended the additional grant of authority to specifically exclude the power to revoke Bo's trust. Section 30.1–29–26 [U.P.C. 5–426], N.D.C.C., explicitly provides, in pertinent part, that:

"*30.1–29–26 (5–426). Enlargement or limitation of powers of conservator.—* ... The court may, at the time of appointment or later, limit the powers of a conservator otherwise conferred by sections 30.1–29–24 and 30.1–29–25, or previously conferred by the court, and may at any time relieve him of any limitation...."

Therefore, even if the additional grant of power is read to have included the power to

revoke Bo's trust, the court may at any time limit a power previously conferred.

Appellant contends that the amendment of powers is not retroactive. The transcript reveals that, when asked whether the amendment was retroactive, the court indicated that it was not. However, when the transcript of proceedings is taken as a whole, it is evident that the court never intended to grant the conservator the power to revoke Bo's trust. The amendment therefore excluded the power to revoke Bo's trust at any time prior or subsequent to the amendment. We conclude that the county court did not err in its determination that the conservator was without the power to revoke Bo's trust.

Accordingly, we affirm the district court's amended judgment.

VANDE WALLE, J., PEDERSON, Surrogate Justice, and HODNY, District Judge, concur.

HODNY, D.J., sitting in place of ERICKSTAD, C.J., disqualified.

VERNON R. PEDERSON, Surrogate Justice, participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.